SAMUEL LUMSDEN and WILLIAM LUMSDEN,
Appellants,

*vs.*

THE CITY OF MILWAUKEE, Respondent.

APPEAL FROM CIRCUIT COURT, MILWAUKEE COUNTY.

The charter of the city of Milwaukee provided for the appointment by the circuit judge of a jury to view premises proposed to be taken for public use, to decide upon the necessity of the taking, and to assess the damages to the owner ; but did not also provide that such jury should be sworn before acting ; held that it is absolutely essential to the validity of the proceeding, that the jury should act in relation to the matter, under the solemnity of an oath ; and, because the charter does not contain any provision for swearing these jurors, the charter in that particular is in violation of § 2, Art. XI, of the constitution of Wisconsin, which requires, that " no municipal corporation shall take private property for public use against the consent of the owner, without the necessity thereof being first established by the verdict of a jury.

Where the statute does not require a jury to be sworn before acting in determining the necessity of taking private property for public use, the fact that they are actually sworn does not render their acts any the more valid than if they acted without oath. No indictment would lie upon such oath, however partially or corruptly they might act in their determinations. Such a jury could not determine upon the necessity of taking the property, within the spirit and meaning of the constitution of this State, and consequently the city could derive no right, under the proceedings, to invade the land sought to be condemned, and make a permanent appropriation thereof for public use.

The proceedings to condemn private property to public use are adversary ; the municipal corporation representing one side, and the owner the other; therefore where the charter of a city provided that the common council may appoint the jurors to assess the damages sustained by reason of the taking the land, &c., of the owner, and also that they may confirm the report of the jurors, and such confirmation shall be conclusive and final ; held that these provisions were in conflict with all our notions of fairness, justice and right, and were void.

Where the city of Milwaukee was about permanently to appropriate private land to the use of the public, without right so to do ; it is proper that a court of equity, upon the application of the owner, should interfere by injunction to restrain the trespass.

This was a proceeding by bill in equity, to restrain the common council from widening a street in the city of Milwaukee. The bill sets forth that the plaintiffs were the owners of twelve acres of land, known on a map of the city as block No. 81, bounded on the north by Brady street, on the east by Marshall street, on the south and west by private lands ; that by virtue of the act of March 18, 1856, " to amend the act to consolidate the act to incorporate the city of Milwaukee, and the acts amendatory thereof," it was enacted that the common council of the city of Milwaukee shall have power to lay out squares, grounds, streets, and alleys, within the limits of the city, and to appropriate the private property of any citizen or citizens to such purpose; that a jury of twelve freeholders, to be appointed by the judge of the circuit court of Milwaukee county, shall determine upon the necessity of taking such grounds for the public use, and award the benefits and damages, either or both, as the case may be, to the owner thereof, in the manner prescribed by said act, and that the award of said jury, when so made, and confirmed by resolution adopted by the city council, shall be conclusive and final as to all parties interested, and from which there shall be no appeal.

The bill further stated that the common council, on the 5th of July, 1856, by resolution ordered and directed, that so much of the lands of the plaintiff's should be taken, as would widen Marshall street to eighty feet, and that Pleasant street be extended through the premises. That in pursuance of this order, a board of appraisers denominated in the act, a jury, were appointed, and did proceed to view the premises, and

condemn a portion of the same for the use of the city, and assessed the value thereof; that the damages for the widening of Marshall street was equal to the benefits; and that the damages for extending Pleasant street exceeded the benefits by $500, which they awarded to the plaintiffs. This report was, on the 29th of August, considered by the common council and confirmed. At the same time the council ordered that within two weeks the chief of the police should repair to and forcibly take possession of the premises condemned, and the plaintiffs feared and believed this threat would be carried into execution.

The bill then charged that the act of the legislature was in violation of the constitution of Wisconsin, in that it provides for the taking of private property for public use, without having first ascertained the necessity of taking the same by the verdict of a jury, and it denies the right of trial by jury to ascertain the amount of damages sustained on account of the condemnation, &c., and that the award is inadequate to the amount of land taken and condemned, that the entry and throwing the land open would work an irreparable injury, &c., and prayed for an injunction, which was granted.

The answer of the city admits the main facts stated in the bill, but claimed the taking was necessary, and averred that the act of the legislature was constitutional.

After the coming in of the answer, the attorneys for the city moved the court to dissolve the injunction; which motion was allowed by Judge Randall. From that order the plaintiffs took an appeal to the supreme court.

The provisions of the sixth chapter of the charter of the city of Milwaukee, which relate to the questions involved in this cause, are the following:

SEC. 1. The common council shall have power to lay out squares, grounds, streets, and alleys, aud to widen the same as follows: Whenever ten or more freeholders residing in any

ward, shall, by petition, represent to the common council that it is necessary to take certain lands within the ward where such petitioners may reside, for public use, for the purpose of laying out public squares, grounds, streets, or alleys, or the enlarging or widening the same, the courses and distances, metes and bounds of the lands proposed to be taken, together with the names and residences of the owners of such premises, if the same shall be known to the petitioners, to be set forth in such petition, the common council shall thereupon cause notice of such application to be given to the occupant or occupants of such lands, if any there be, by publishing notice of such application in the official paper for four weeks, at least once in each week.

SEC. 2. Such notice shall state, that on a certain day therein to be named, but not before the expiration of such publication, application will be made to the judge of the circuit or county court of Milwaukee county, for the appointment of twelve jurors to view said premises and to determine whether it will be necessary to take the same for the purpose specified in said petition, at which time and place any person interested in the land proposed to be taken, may appear before said judge, and make objections to the appointment of any juror proposed to be appointed by said judge, stating the grounds of objection.

SEC. 3. Upon the presentation of such application, and upon proof of the publication or service of the notice hereinbefore required, the said judge shall thereupon appoint twelve reputable freeholders, residents of the city, but not residents of the ward in which such premises may lie, nor interested in the result of such application. The said judge shall thereupon issue his precept, directed to said jurors, requiring them, within thirty days to view said premises, to be specified in said precept, and to make return, under their hands, to the common council, whether, in their judgment,

it is necessary to take said premises for the purpose specified in such application.

SEC. 4. If any of the jurors so appointed, shall be disqualified from acting, or shall refuse to act, the judge shall appoint others in their places, and a memorandum of such substitution shall be indorsed on the precept.

SEC. 5. The said jurors, at such times as they may agree upon, of which, at least three days notice shall be given by publication in the official papers, shall proceed in a body to view the premises in question, and for their own information, as to the value of the premises to be taken, or the necessity of taking the same, said jury or any one of their number, may apply to the judge appointing said jury to summon such witnesses as they may desire, to appear before said jury and testify as to the facts in the case, and shall hear such testimony as may be offered by any party interested, which testimony shall be reduced to writing by one of the jurors, and either of the jurors shall be authorized to administer the necessary oaths to witnesses.

SEC. 6. After viewing the premises and hearing such testimony as may be offered, the jurors shall make a report of their proceedings, which shall be signed by them respectively, and which shall state whether, in their judgment, it is necessary to take the premises in question for the public use, which said report, testimony and precept, shall be returned to the common council, within the time limited therein.

SEC. 7. Should the jurors report that it is necessary to take such premises, the common council shall enter an order among their proceedings, confirming the whole of said report or any part thereof, and in case the common council shall confirm said report, or any part thereof, they shall direct the same jurors within one month thereafter or such further time as may be deemed proper, to again view said premises, at such time as they may agree upon, of which at least three

days notice shall be given, by publication in the official papers, for the purpose of ascertaining and determining the amount of damages to be paid to the owner or owners of the property proposed to be taken, and also what lands or premises will be benefitted by such taking, and said jury may obtain the testimony of witnesses as to the facts in the case, in the same manner as provided in section three of this act, and shall hear such testimony as may be offered by any party interested, which testimony shall be reduced to writing by one of the jurors, and said jury shall determine and assess and return such damages and benefits to the common council, by filing the same with the city clerk within the time limited.

SEC 12. If the damage to any person be greater than the benefits received, or if the benefit be greater than the damages, in either case the jurors shall strike a balance, and carry the difference forward to another column, so that the assessment will show what amount is to be received or paid by such owner or owners respectively, and the difference only shall, in any case, be collectable of them, or payable to them.

SEC 14. Having ascertained the damages and expenses of the proposed improvement as aforesaid, the jurors shall thereupon apportion and assess the same, together with the costs of the proceedings, upon the real estate by them deemed benefitted, in proportion to the benefits resulting thereto from the proposed improvement, as nearly as may be, and shall describe the real estate upon which their assessments may be made. The award of the said jurors shall be signed by them, and returned, together with the testimony taken, to the common council, within the time limited in their order of appointment, and the award of said jury when so made as aforesaid, and confirmed by resolution adopted by the common council, shall be conclusive and final as to all parties interested, and from which there shall be no appeal.

Sec. 20. After the jurors shall have made their report as to the necessity of taking any lands under this act, and the same shall have been confirmed, the common council shall have power to appoint new jurors in the place of any who shall neglect or refuse to serve; and the jurors before entering upon the discharge of their duties, shall severally take an oath before some competent officer, that they are freeholders of said city, and not interested in the premises proposed to be take taken, and that they will faithfully and impartially discharge the trusts reposed in them.

The arguments of the counsel for the plaintiffs occupying about fifty pages of printed matter; and also that of the defendant, of fifteen pages are omitted by necessity, although they are very able on this great constitutional question.

*Nelson Cross*, for the appellant.

*H. L. Palmer*, for the respondent.

*By the Court*, COLE, J. In disposing of this appeal, it does not become necessary to consider and determine whether or not all the provisions of the charter of the city of Milwaukee, which relate to the manner of appointing a jury to view the premises, and the mode of proceeding prescribed for establishing the necessity of taking the property for public use, fully and substantially comply with the second section of the eleventh article of the constitution of this State. For the purposes of this case it may be conceded that the jury may be selected in the manner prescribed in the charter, and that the constitution did not contemplate the making up of an issue in a court of record to try the question as to the necessity of appropriating the land to the use of the public against the consent of the owner, and still we think there is a fatal

defect in the charter which invalidates this whole proceeding. We have not been able to find any provision of the charter, which by any fair, reasonable construction, requires that the jury appointed by the judge should be sworn before entering upon the discharge of the duty of viewing the ground and establishing the necessity. That it is absolutely essential to the validity of the proceeding that the jury or commissioners if you please to call them such, should act under the solemnities of an oath, in determining the necessity, was not controverted upon the argument of the cause, and probably will not be denied. But it is insisted by the counsel for the appellee that section 20 of article six of the act of 1852, applies to and requires the jury appointed by the judge, to take the oath. That section reads as follows : " After the jurors shall have made their report as to the necessity of taking any lands under this act, and the same shall have been confirmed, the common council shall have power to appoint new jurors in the place of any who shall neglect or refuse to serve, and the jurors before entering upon the discharge of their duties, shall severally take an oath before some competent officers, that they are freeholders of said city, and not interested in the premises proposed to be taken, and that they will faithfully and impartially discharge the trusts reposed in them."

It is admitted that this is the only provision of the charter which says anything about the jury being sworn, and the question is, can it be construed as referring to the jury appointed by the judge in the first instance ? We cannot perceive how such a construction can be maintained. To determine the object and meaning of the twentieth section, let us look at some of the other provisions of the charter. The act of 1852, with the amendments contained in the act of 1856, authorizes the judge of the circuit or county court of Milwaukee county upon proper application to appoint twelve jurors to view the ground proposed to be taken for

public use, and determine whether it is necessary thus to take it. Other provisions of the two acts prescribe the manner in which the jury shall proceed to view the premises for the taking of such testimony as may be offered by the parties interested, and for their making a report to the common council within a certain time of their proceedings, in which report the jury is required to state, whether in their judgment, it is necessary to take the premises in question. It is still further provided by other sections, that the same jury may make an assessment of the amount of damages to be paid to the owner for the property proposed to be taken. It is proper to observe that if any of the jurors appointed by the judge to view the premises are disqualified from acting, or refuse to act, the judge is authorized to appoint others in their stead. Then in natural order comes the twentieth section, which provides, that after the jurors shall have made their report as to the necessity of taking any lands under the act, and the report has been confirmed, the common council shall have power to appoint new jurors in the place of any who shall neglect or refuse to serve in determining the amount of damages to be paid the owner of the property, and those jurors are required to take an oath. It appears to us that the natural connection and relation of the words in the context show that the jurors spoken of in this section were the new ones who might be appointed by the common council, and not the ones appointed by the judge. It is essential that the oath should be taken by the first jury, and the charter in clear and unambiguous language should require it to be done. It is very probable that it is a *casus omissus* in the law, but we cannot supply it by construction. We do not think that the charter as it now stands, does provide that the first jury should be sworn. It is true, it is set up in the answer that the jury appointed to view the premises and determine the necessity of taking them for public use were sworn before

entering upon the discharge of their duties, but it is very manifest that if the oath was not required by the charter it was extra judicial and no indictment for perjury would lie upon it, however clearly it might be proven that the jury in their finding and report, had acted most partially and corruptly. If the first jury was not required by the charter to be sworn, they could not determine the necessity of taking the property within the spirit and meaning of the constitution. Consequently the corporation derived no right under the proceeding to invade the land of the complainants, and make a permanent appropriation thereof for the use of the public.

We deem it proper to make one or two observations further upon this section: It must be obvious that a proceeding under this charter to condemn and set apart property belonging to an individual for the use of the public, is an adversary proceeding, wherein the municipal corporation of the city of Milwaukee, representing the public, is a party on the one side, and the person whose property it is proposed to take is a party on the other side. By the 20th section, it will be seen power is given the common council to appoint jurors, in the place of any who may neglect or refuse to serve of those first appointed by the judge, whose duty it is to determine the amount of damages to be paid the owner of the land. A majority, or even all of the jurors selected to establish the necessity of taking the property, may refuse to act in fixing the amount of damages, in which case the common council, one of the parties, *ex parte*, may appoint a jury, which shall determine the amount of damages the city must pay. It is impossible to comment in a proper manner upon such a provision which confounds all our notions of fairness, justice, and right. Nor does it improve the character of the provision to find that the award of the jury thus selected must be confirmed by a resolution of the board of the common council before it is binding, and that the action of the board is conclusive

and final upon the rights of the parties interested therein and from which there is no appeal. (§ 14, chap. 6, act 1852; § 5, act 1856.) If, therefore, the corporation of the city of Milwaukee had no right to enter upon the land of the complaints, not having taken those steps which it was indispensable should be taken to determine and establish the necessity of taking it for public use, if it was about to appropriate the land permanently to the use of the public, we think it very proper that a court of equity should interfere by injunction, and restrain the trespass. It seems to be well settled that courts of equity will thus interfere in such cases. See *Bonaparte vs. the Cambden and Amboy Railroad Company*, 1 Bald. C. C. R. 206; *Mohawk and Hudson Railroad Company vs. Artcher*, 6 Paige, 83; 2 Story Eq. J., § 927, *et seq.*, and cases cited in the notes.

It follows, therefore, that the order of the circuit court, dissolving the injunction, must be reversed, and the cause remanded for further proceedings, according to law.