THE STATE EX REL. ANDREWS, Respondent, vs. THE CITY OF OSHKOSH, Appellant.

*March 1 — April 11, 1893.*

*Municipal corporations: Condemnation of land: Notice to owners: " Due process of law:" Impaneling of jury: Presumption of regularity: Right to appeal: Assessment of damages.*

1. The Oshkosh city charter provided that, in proceedings to condemn land for public use, the city attorney should present to the circuit court a petition for such condemnation; that he should also pre-

pare a notice addressed "To whom it may concern," to the effect that such petition had been so presented and that all persons interested might answer the same within twenty days; that such notice might be served upon the owners of the land like a summons in a civil action; and that the filing of the petition should be deemed the commencement of a suit. *Held,* that the notice so provided for was sufficient under sec. 2, art. XI, Const. of Wis. (providing that "no municipal corporation shall take private property for public use, against the consent of the owner, without the necessity thereof being first established by the verdict of a jury"), and that personal service thereof was "due process of law," within the meaning of sec. 1, art. XIV, Amend. Const. of U. S., although the charter further provided that the matter might be called up in court for hearing, and a jury impaneled to determine the necessity for taking the land, without further notice to parties not answering the petition.

2. The charter provided that the circuit court should impanel the jury "as in civil cases triable by jury." *Held,* that this implied that the jury should be sworn as in civil cases.

3. Nothing appearing to the contrary, it will be presumed that the jury in such a case were sworn before entering upon their duty, and that they viewed the premises and returned their verdict as required by the charter.

4. Such condemnation proceedings being purely statutory, there is no right to an appeal unless it is given by the statute; and the charter provisions authorizing the proceedings are not void because they provide that a judgment of condemnation shall not be appealed from but shall be reviewed only upon *certiorari.*

5. The board of public works of the city, acting under the sanction of an official oath, is a fair and impartial tribunal to assess damages for the taking of the property.

6. The charter provided that the board of public works should make an assessment of the damages, and should then give notice by publication that their report was open to review in their office and would so continue for twenty days and that upon a day named they would hear all objections; that at said time the board should hear all parties interested, and reduce to writing all objections and the evidence in support of them, and should have power to review, modify, and correct said assessment; and that thereupon a complete and final assessment should be made by them. *Held,* that this provided for sufficient notice and opportunity to present evidence and be heard.

APPEAL from the Circuit Court for *Winnebago* County.

Block 40 of the Fourth ward of the city of *Oshkosh* is bounded on the north by Merritt street, east by Jefferson avenue, south by Washington street, and west by Main street. Prior to the dates herein mentioned there was an alley running through said block north and south, and near the middle thereof, about eight feet wide. The relator owned two lots, 6 and 7, each sixty feet wide, in about the middle of the block, fronting on Jefferson avenue. On August 25, 1891, twenty-three lot-owners in said block petitioned the mayor and common council to open and widen said alley, and for the summoning of a jury to determine the feasibility and necessity thereof, under the consolidated and amended charter of the city (ch. 59, Laws of 1891), by adding to said alley a strip eight feet wide, taken from the rear end of each and all of the lots fronting on said Jefferson avenue. On August 25, 1891, said petition was referred to the board of public works of said city. On September 21, 1891, said board of public works reported to said mayor and common council that they found said petition sufficiently signed, and giving a description of the strip of eight feet to be added to said alley, and submitted therewith a plat showing the alley as it then was and as it would be when widened. It appears that all of the owners of lots abutting on said alley consented to such widening, except the relator.

On September 29, 1891, it was resolved by the mayor and common council that it was necessary to condemn to the public use the strip of land described, being eight feet wide, for the widening of said alley; and, further, that the city attorney be directed to commence and prosecute the proper proceedings therefor. On October 29, 1891, the city attorney made and filed an oath with said common council, to the effect that said relator was the only person

known as owning or being interested in the lands proposed to be taken in said application.

On October 31, 1891, the city attorney filed in the circuit court his petition, reciting the action of the council, praying that said strip of land upon said lots 6 and 7 be condemned for the purpose of opening and widening said alley for the public use. On October 31, 1891, the circuit court ordered that notice of the presentation to the court of said petition for condemnation, and for time to answer said petition, be personally served upon the said relator, if she could be found within the state. On November 3, 1891, a notice in said matter was personally served on the said relator, addressed "To whom it may concern," to the effect that said petition had been presented to the court, and that all persons interested in said matter might answer said petition at any time within twenty days after the service of said notice, exclusive of the day of service. On November 30, 1891, a notice was personally served upon the said relator in said matter by the city attorney, and which notice was addressed to her, and was to the effect that she should take notice that the city attorney would apply to the circuit court at the court house in Oshkosh, December 4, 1891, at the opening of the court on that day or as soon thereafter as counsel could be heard, for the impaneling of a jury to determine whether or not it was necessary to take the land proposed to be condemned in said proceeding. On December 4, 1891, the city attorney made and filed with said circuit court his affidavit to the effect that more than twenty days had elapsed since the filing of said petition and affidavit aforesaid, and since the service of said notice, and that no answer, demurrer, or notice of appearance therein had been served upon him or received at his office. On December 4, 1891, the court ordered said matter continued until December 7, 1891. A stipulation signed by the attorneys for

the respective parties was filed, to the effect that it was admitted and stipulated that the relator did not appear in said matter December 4, 1891, and that no notice of the continuance thereof was given to her, and that she did not appear on December 7, 1891; and that said order of continuance was entered *ex parte*.

A jury was impaneled and sworn, and examined the premises, and December 8, 1891, they returned a verdict in these words: "We, the jury, find that it is necessary to condemn the real estate sought to be condemned in this proceeding for the public use. E. H. RUMERY, Foreman." On December 9, 1891, a judgment, with recitals of the facts, was entered and signed by the judge of said court, in which it was ordered and adjudged that judgment be entered in said action condemning to the public use said strip of land eight feet wide; and on the same day a judgment signed by the clerk of said court was entered, wherein it was ordered and adjudged that the strip of land described be, and the same was thereby, condemned to the public use.

On December 22, 1891, a resolution, with recitals of the facts, was adopted by the common council of the city, to the effect that the board of public works be authorized and directed to make an assessment of damages by reason of such condemnation, which resolution was, December 28, 1891, presented to the mayor, and by him approved. On January 11, 1892, the said board of public works met and viewed said premises, and agreed upon the following assessment of damages: For land taken, $256; for moving buildings, $40; for moving fence, $10. Thereupon a notice was signed by the board of public works, addressed "To whom it may concern," to the effect that by virtue of an order of the common council notice was thereby given that the board of public works had made an assessment of damages arising by reason of the taking of the strip of land de-

scribed, and that a copy of such assessment of damages was on file and open to review in the office of the board of public works, and would be so continued for the space of twenty days after the first publication of said notice, and that February 5, 1892, the board would be in session to hear all objections that might be made to such assessment. Said notice was published once in each week for three successive weeks, commencing January 13, 1892. At the same time notice by publication of a resolution to assess the damages, also of the report of the assessment of damages, and also of the final assessment of damages, and also a certificate of the board that assessment had been made, were duly published. On February 9, 1892, the said board of public works made their final assessment, and filed a report of the same with the common council, to the effect that they had viewed the premises and awarded to the relator damages for the taking of said strip of land in the aggregate of $306. On February 5, 1892, the board was in session at their office to hear all objections that might be made to said assessment. No one appeared for the purpose of objecting to said assessment, and thereupon the board made their complete and final assessment of damages by reason of the condemnation of said strip, in the aggregate amount named, and giving the details thereof. On February 9, 1892, it was resolved by the mayor and common council that said report of assessment of damages by said board be, and the same was thereby, confirmed, and the same was thereupon presented to the mayor and by him approved. On February 9, 1892, it was resolved by the mayor and common council, in effect, that the sum of $306 be, and the same was thereby, appropriated out of the general city fund, and credited to the Fourth ward fund, and that the city treasurer, city clerk, and comptroller be, and they thereby were, authorized and directed to make the proper entries upon their books therefor, which

554    SUPREME COURT OF WISCONSIN.    [84

The State ex rel. Andrews vs. The City of Oshkosh.

resolution was thereupon presented to the mayor and by him approved. On February 9, 1892, the said comptroller certified to the mayor and common council that there was in the hands of the city treasurer a sufficient sum available for the purpose of paying said $306 awarded to the relator as such damages. On February 9, 1892, the city attorney certified to the mayor and common council that the said relator was entitled to receive the city order issued in payment of the damages awarded by reason of said condemnation. Thereupon it was resolved by the mayor and common council that the mayor, city clerk, and comptroller be, and they were thereby, authorized and instructed to draw an order on the city treasurer for said sum, payable out of said fund, in favor of said relator, in payment of said damages, which was countersigned by the comptroller, and thereupon presented to and approved by the mayor. On February 9, 1892, an order was drawn by the mayor, signed by him and the city clerk, upon the treasurer, to pay said relator said sum of $306 for such damages out of said fund. On February 10, 1892, the mayor issued a written notice to said board of public works, to the effect that they were thereby authorized and directed to take possession of, and improve for the public use, the said strip of land at the earliest time possible.

On February 29, 1892, the relator filed her verified petition to the circuit court, praying that a writ of *certiorari* be issued to the city, the mayor, common council, city clerk, comptroller, and members of the board of public works, to certify to said court said condemnation proceedings, and all of them, and for a stay of proceedings until the legality thereof should be determined. On February 29, 1892, said writ of *certiorari* was issued, in accordance with the prayer of said petition. On May 2, 1892, the defendants made return to said writ of the facts stated. Upon the hearing the court decided said cause in favor of said relator and

against the defendants; and on October 11, 1892, judgment was entered therein, reciting, in effect, that the proceedings for said condemnation were in all respects irregular, erroneous, and void, and adjudging that said proceedings, and all and singular thereof, be, and the same were thereby, quashed, reversed, and in all things held for naught; and it was further adjudged that said relator have and recover of the city her costs as therein taxed; and it was further adjudged that the defendants were thereby forbidden and enjoined from entering upon said premises, or proceeding further under said condemnation proceeding. From that judgment the defendant appeals.

For the appellant there was a brief by *H. I. Weed*, attorney, and *C. W. Felker*, of counsel, and oral argument by *Mr. Felker*. They argued, among other things, that notice by publication in proceedings to condemn land is sufficient. Lewis, Em. Dom. sec. 367; *Wilson v. Hathaway*, 42 Iowa, 173; *McIntyre v. Marine*, 93 Ind. 193; *Baltimore & O. & C. R. Co. v. North*, 103 id. 486; *Carr v. State*, id. 584; *Ind. & C. G. R. Co. v. State ex rel. Flack*, 105 id. 37; *Mo. R., F. S. & G. R. Co. v. Shepard*, 9 Kan. 647; *State v. Beeman*, 35 Me. 242; *Hildreth v. Lowell*, 11 Gray, 345; *People ex rel. Ayers v. Richards*, 38 Mich. 214; *St. P., M. & M. R. Co. v. Minneapolis*, 35 Minn. 141; *State v. Trenton*, 36 N. J. Law, 499; *Cupp v. Commissioners*, 19 Ohio St. 173; *Road in Sterrett Township*, 114 Pa. St. 627; 6 Am. & Eng. Ency. of Law, 608, note 5. When the court had obtained jurisdiction of the matter, and the person interested had been notified to appear and answer the petition, she was charged with knowledge that the court would proceed to determine the questions presented, in accordance with law and the rules of the court. A party defendant has his day in court when he has had personal notice, as required by statute, to appear and defend, and refuses or neglects to do so. The assessment of damages in condemnation pro-

ceedings is by the charter made a part of the duties of the board of public works, and is certainly covered by their oath of office, which was taken and subscribed as required by law. *Powers v. Oshkosh*, 56 Wis. 660; *McIntyre v. White Creek*, 43 id. 620. Unless the right of appeal is guaranteed by the constitution, the whole matter is within the control of the legislature, which may grant or withhold it, or impose such condition as it may see fit. Lewis, Em. Dom. sec. 537; *Kundinger v. Saginaw*, 59 Mich. 355; *Norfolk S. R. Co. v. Ely*, 95 N. C. 77; *Schwede v. Burnstown*, 35 Minn. 468. Statutes making the decision of commissioners or of inferior tribunals final and conclusive are not uncommon, and are valid unless in conflict with local constitutions. Lewis, Em. Dom. sec. 536; *Appeal of Houghton*, 42 Cal. 35; *Matter of Canal & W. Sts.* 12 N. Y. 406; *King v. Mayor*, 36 id. 182; *Matter of Comm'rs of Cent. Park*, 50 id. 493; *Matter of Prospect Park & C. I. R. Co.* 85 id. 489; *Matter of Comm'rs of State Reservation*, 102 id. 734. The objection that the charter does not provide for the assessment of damages by an unbiased body of men is not tenable. Even where the right to an assessment by a jury of twelve men is given by the constitution it has been held that the assessment may, under legislative authority, be made in the first instance by commissioners, if, by appeal or other transfer to a common-law court, an unfettered right to an assessment by jury under judicial direction exists or is provided. Dillon, Mun. Corp. sec. 618, notes; *Lamb v. Lane*, 4 Ohio St. 167; *Shaver v. Starrett*, id. 494; *Matter of Wells Co. Road*, 7 id. 16; *Cairo & F. R. Co. v. Trout*, 32 Ark. 17; *Minneapolis v. Wilkin*, 30 Minn. 140; *Callan v. Wilson*, 127 U. S. 540; *Des Moines v. Layman*, 21 Iowa, 153.

For the respondent there was a brief by *Finch & Barber*, and oral argument by *Charles Barber* and *F. Beglinger*. They contended, *inter alia*, that the charter is invalid and

the proceedings under it void because it does not provide for notice to the land-owner of the time and place where the jury are to be impaneled and are to meet to determine the necessity of taking the land. When a municipal corporation condemns land the necessity therefor must be established by the verdict of a jury (Const. art. XI, sec. 2); and this requirement is not complied with unless the landowner obtains notice, personal if possible, of every step in the proceeding in its nature final. *State ex rel. Flint v. Fond du Lac,* 42 Wis. 299; *Seifert v. Brooks,* 34 id. 443; *Lumsden v. Milwaukee,* 8 id. 485; *Hood v. Finch,* id. 381; *Kundinger v. Saginaw,* 59 Mich. 355; *Mulligan v. Smith,* 59 Cal. 206; *In re Road in South Abington,* 109 Pa. St. 118; Lewis, Em. Dom. sec. 364. If the chapter on condemnation in the city charter is invalid by reason of not providing a legal method to condemn land, then the circuit court was wholly without jurisdiction in the matter. *Seifert v. Brooks,* 34 Wis. 443; *Powers v. Bears,* 12 id. 213; *State v. West Hoboken,* 37 N. J. Law, 77; *Stuart v. Palmer,* 74 N. Y. 183. The notice provided by the charter is not a personal notice, but a general one, not directed to any particular person. Where a law requires the owner to be named, it is not satisfied by designating him generally as one interested. *Birge v. C., M. & St. P. R. Co.* 65 Iowa, 442; *Boorman v. Santa Barbara,* 65 Cal. 313. The statute in question is void because it fails to provide for the proper review of the proceedings in the circuit court on the question of necessity. It is defective in not making provision that the proceedings upon the trial shall be preserved and become a part of the record, so that they may be reviewed on *certiorari.* The charter is void in that it does not provide a just and impartial assessment of damages. The board of public works represents exclusively the interests of the party condemning, an interest wholly adverse to that of the land-owner, in a proceeding strictly adversary. The

constitution requires that the tribunal assessing the damages be composed of impartial men indifferently chosen between the parties. *Powers v. Bears*, 12 Wis. 213; *Hood v. Finch*, 8 id. 381; *Lumsden v. Milwaukee*, id. 485; *Brock v. Hishen*, 40 id. 674; *Williams v. Mitchell*, 49 id. 284; *State ex rel. Iola v. Nelson*, 57 id. 147; *State ex rel. Luderman v. Findley*, 67 id. 86; *Langford v. Comm'rs*, 16 Minn. 375; Mills, Em. Dom. sec. 85; *Rich v. Chicago*, 59 Ill. 286; *Hessler v. Drainage Comm'rs*, 53 id. 105; Lewis, Em. Dom. secs. 313, 405; *Mich. A. L. Co. v. Barnes*, 40 Mich. 383; *Kundinger v. Saginaw*, 59 id. 355; *Bruggerman v. True*, 25 Minn. 123; *Rhine v. McKinney*, 53 Tex. 354; *House v. Rochester*, 15 Barb. 517; *Menges v. Albany*, 56 N. Y. 374; *Charles R. Bridge v. Warren Bridge*, 11 Pet. 520; *Wurts v. Hoagland*, 114 U. S. 614; *Reckner v. Warner*, 22 Ohio St. 275; *Tharp v. Witham*, 65 Iowa, 566; *Norristown Turnpike Co. v. Burkett*, 26 Ind. 53; *Stuart v. Baltimore*, 7 Md. 500. Though the assessment of the board of public works should be considered only as preliminary, it is of the same character as that condemned in *Powers v. Bears*, 12 Wis. 213. It cannot, under the constitution, give the city any right to appropriate land; and because the act permits such appropriation without first providing for such a fair and impartial assessment, it is unconstitutional and void. *Norton v. Peck*, 3 Wis. 714; *Shepardson v. M. & B. R. Co.* 6 id. 605; *Robbins v. M. & H. R. Co.* id. 636; *Ford v. C. & N. W. R. Co.* 14 id. 609; *Loop v. Chamberlain*, 20 id. 135; *State v. Road Comm'rs*, 41 N. J. Law, 89. The act does not provide for a sufficient notice of the assessment. The only notice provided for is by publication after the assessment is made. Lewis, Em. Dom. sec. 366; *Zimmerman v. Canfield*, 42 Ohio St. 463; *Baltimore & O. R. Co. v. P., W. & K. R. Co.* 17 W. Va. 812; *Boonville v. Ormrod's Adm'r*, 26 Mo. 193; *Stuart v. Palmer*, 74 N. Y. 190; *Mulligan v. Smith*, 59 Cal. 206; *In re Road in South Abington*, 109 Pa. St.

118; *Neeld's Road,* 1 id. 353. Such notice must be personal wherever possible. *State ex rel. Flint v. Fond du Lac,* 42 Wis. 287. The act fails to provide for a just assessment, in that it permits the board of public works to make an assessment without hearing any evidence or obtaining any reliable knowledge on the question. After hearing objections to their report and the evidence in support of such objections, the board is permitted to make a final report contrary to all the evidence submitted. It is settled that an award of this nature must be based on the evidence. *Milwaukee I. Co. v. Schubel,* 29 Wis. 444; *Washburn v. M. & L. W. R. Co.* 59 id. 364; *Munkwitz v. C., M. & St. P. R. Co.* 64 id. 403; *Seefeld v. C., M. & St. P. R. Co.* 67 id. 96; *Close v. Samm,* 27 Iowa, 503; *Washington, C. & St. L. R. Co. v. Switzer,* 26 Grat. 661; *Cent. P. R. Co. v. Pearson,* 35 Cal. 247; *Rochester & S. R. Co. v. Budlong,* 6 How. Pr. 467; *Snyder v. W. U. R. Co.* 25 Wis. 60.

CASSODAY, J. The proceedings for condemnation, mentioned in the foregoing statement, appear to have complied substantially with the several provisions of the charter as revised, consolidated, and amended by ch. 59, Laws of 1891. The city is expressly empowered to condemn lands for alleys in the manner prescribed by subch. XX of the charter. Sec. 1. It is contended that the notice of the presentation of the petition to the court for such condemnation, as prescribed in sec. 6 of said subchapter and set forth in the foregoing statement, was insufficient to satisfy the requirement of the section of the constitution which declares that " no municipal corporation shall take private property for public use, against the consent of the owner, without the necessity thereof being first established by the verdict of a jury." Sec. 2, art. XI.

It will be observed that this section does not mention the subject of notice. Nevertheless, the necessity of no-

tice is implied, as determined in several cases in this court, cited by counsel in support of their contention. Thus in *Hood v. Finch*, 8 Wis. 381, it was held that a charter which authorized the determination of the *necessity* of such taking, and *to fix the compensation therefor*, by *six* freeholders, without any notice to the owner, was unjust, inequitable, and in violation of the spirit of the constitutional provision quoted; and it was there queried whether six freeholders, so summoned, constituted a "jury," within the meaning of that provision. No such questions are here involved. In *Seifert v. Brooks*, 34 Wis. 443, the charter required no notice to the lot-owner of the time and place of drawing or selecting the jury, nor of their assembling to consider and determine the question of such necessity, nor of any step down to the rendition of the verdict, except that it did provide that the jury should "hear the declarations of the parties interested for or against the laying out or opening of said street." But this was construed not to require any notice; and so it was held that such failure of the charter to require any such notice rendered the condemnation proceedings thereunder wholly void by reason of the constitutional provision quoted. In *State ex rel. Flint v. Fond du Lac*, 42 Wis. 287, the only notice required to be given to the lot-owner of the time and place for the appointment and meeting of the jury for determining the necessity for the taking was by publication in a newspaper. The relator was one of such lot-owners, and resided in the city at the time of such appointment and meeting, but received no personal notice, and it was held that the failure of the charter to require personal notice to such lot-owner rendered the proceedings for such condemnation void, by reason of the section of the constitution quoted. It was there said by COLE, J., speaking for the court, that "where the owner is known and lives, or has an agent or tenant living, within the municipality, a per-

sonal notice of these steps is essential, and must be given, or the proceedings will be void. . . . Where the owner is unknown, or is a nonresident, notice by publication may be sufficient." To the same effect is *Kundinger v. Saginaw,* 59 Mich. 361.

It will be observed that none of the cases thus cited determine the precise question here presented. The section of the charter mentioned required the city attorney "to prepare, and file with said petition" for condemnation, "a sworn list of the names and residences . . . of persons owning or being interested in the lands proposed to be taken therein," with copies thereto annexed of the original petition, resolution of the common council, and the report of the board of public works, as to the proposed condemnation, and thereupon to prepare a notice substantially in the form therein given. Such list was prepared and filed, and such notice was personally served on the relator, November 3, 1891, as mentioned in the foregoing statement. The section declares that "the filing of said petition shall be deemed the commencement of a suit;" and that such notice may be served upon the owners of the land to be condemned, and all persons interested therein, in all respects like a summons in a civil action; and, in case any of them are nonresidents, then such service is to be by publication, as therein prescribed. The mere fact that the notice was addressed " To whom it may concern " is of no significance. The important question is whether it brought home to the relator and other lot-owners notice of the " suit " thus commenced. The title to the notice showed the nature of the proceedings. It referred to the petition thus on file in the matter thus entitled, and required " all persons interested in said matter " to answer said petition within the time specified. It appeared from the petition and the affidavit of the city attorney annexed, thus on file, that the relator was one of the persons thus interested, and that the strip

of her land described in said statement was the land therein sought to be condemned. The petition so on file, with the papers annexed, as parts thereof, called for "a jury of twelve men" to be "summoned to deliberate upon the feasibility of opening said" alley, and for proceedings for condemning said strip. The charter is a public law, and all citizens are conclusively presumed to have knowledge of its provisions. The relator must be regarded, therefore, as having been thus notified of the contents of the petition so on file, and the papers annexed as parts thereof, and the proceedings thereupon authorized.

The section mentioned authorized the relator, within twenty days after such personal service upon her, to serve an answer to such petition upon the city attorney, and file the same, as in cases of answers in civil actions. The section prescribes the proceedings to be taken in case no answer is served, and also provides that, "if an answer or answers shall have been served, the issue upon the petition and such answer or answers shall be tried by the court and jury, the same as other issues of fact, and in either case the court shall thereupon instruct the jury as in other cases triable by jury." The land-owner so answering is by the section entitled to three days' notice of such trial, and the jury are to be impaneled as hereinafter mentioned. The question thus to be submitted to the jury by the court, in either case, is whether it is or is not "necessary to condemn the real estate sought to be condemned in" such "proceeding for the public use." The only object of answering such petition, therefore, is to contest the claim of such necessity. If the necessity be conceded, then it is a mere waste of time to put in an answer and be to the expense of going to trial upon the issue thus formed. The lot-owner is certainly at liberty not to answer. The section also provides, in effect, that "no notice of retainer or appearance *without an answer* shall be of any avail;" that upon the full expiration

The State ex rel. Andrews vs. The City of Oshkosh.

of the time for answering the city attorney may, " without notice to parties who have not answered," "call up said matter for hearing;" that "the circuit court shall thereupon impanel a jury *as in civil cases triable by jury*, to determine whether or not it is necessary to take the land proposed to be condemned for the public use. Such jury shall view the premises in question in the same manner as in civil actions when a view of premises is ordered by the court, *at the expense of the city*, and shall return into court, as in such cases," their verdict as to whether such condemnation is or is not necessary, as indicated; and, " upon the coming in of the verdict, judgment " is to be entered condemning the land or dismissing the petition, as the verdict may require; and no appeal therefrom is allowable, but the judgment is reviewable in this court upon *certiorari*.

The question recurs whether the provision of the charter mentioned, dispensing with the notice of three days to lot-owners who thus failed to answer, of the time and place of impaneling the jury, rendered the judgment of condemnation void. The city attorney did in fact give to the relator personal notice of his application to the court at the court-house, for that purpose, December 4, 1891, "at the opening of the court on that day or as soon thereafter as counsel" could "be heard;" but the relator did not appear therein, and the matter was continued by the court, and the jury was not impaneled until December 8, 1891. Besides, it is claimed that, as the charter dispensed with such notice to land-owners who failed to answer, the serving of the notice upon the relator was without any legal significance. It is true that, in one of the cases cited, Dixon, C. J., in effect declared that " every act or step, in its nature final," in such proceedings, done or taken without notice to the lot-owner, is void. *Seifert v. Brooks*, 34 Wis. 446. Such declarations were, in effect, repeated in *State ex rel. Flint v. Fond du Lac*, 42 Wis. 287. In the case at bar the learned trial judge

manifestly felt bound by such declarations. But in neither
case were such declarations called for by the decision made.
Besides, in giving a reason for such declarations in the case
cited, DIXON, C. J., said: "That every man is entitled to his
day in court, and must have it, and cannot be affected in
his person or his property unheard, or without the privilege
secured to him of appearing or being represented in his
own defense, if he so desires, is a maxim the force and im-
portance of which every good lawyer appreciates, and one
which no court ever surrenders." In other words, and in
the language of the fundamental law: "No state shall
.  .  . deprive any person of life, liberty, or property
without due process of law." Sec. 1, art. XIV, Amend.
Const. U. S.

The principal question presented, therefore, is whether
the condemnation proceedings, if held to be effective, would
operate to deprive the relator of her "property without
due process of law," within the meaning of the constitu-
tional provision last quoted. "Due process of law," said
WAITE, C. J., "is process due according to the law of the
land. This process in the states is regulated by the law of
the state." *Walker v. Sauvinet,* 92 U. S. 93. See *Davidson
v. New Orleans,* 96 U. S. 104; *Walston v. Nevin,* 128 U. S.
582. In *Huling v. K. V. R. & I. Co.* 130 U. S. 559, it was
held, in proceedings commenced under a state statute for
condemnation of land for a railroad, that service of notice
to a nonresident owner of land affected thereby, by publi-
cation, was "due process of law," as applied to such a case.
*Arndt v. Griggs,* 134 U. S. 326. This is, in effect, conceded
in the adjudications of this court above cited as to nonresi-
dent lot-owners. We are constrained to hold that the per-
sonal service upon the relator of the notice of the presenta-
tion of the petition for condemnation, and requiring her to
answer the same, as mentioned, was "due process of law."
That process, in effect, notified her of the contents of the

petition on file and the papers thereto annexed, and of the subsequent proceedings thereon essential to such condemnation, including the impaneling of the jury and the assessment of damages. If the relator desired the three days' notice of the time and place of calling up the matter in court for hearing and the impaneling of the jury to determine the necessity of such taking, she could have secured the same by answering the petition, which, under the charter, would have given her an absolute right to such notice. Manifestly, she had no such desire, since she did not appear at such hearing after being actually notified. The mere fact that the charter dispensed with such three days' notice to such lot-owners as did not answer did not prevent the original notice from being "due process of law," within the meaning of the constitutional provision quoted. The determination of such necessity was an essential part of such condemnation, and hence was covered by the notice. It is entirely unlike a subsequent proceeding in a matter required to be instituted upon a new petition, and for a substantive purpose. Even in *Seifert v. Brooks,* 34 Wis. 443, it was left undecided whether the mere omission to provide for notice to the lot-owner of the time and place for the selection of the jury would have the effect to avoid the proceedings.

Of course, under the constitutional provision of this state quoted, no such condemnation could be had until the necessity therefor should be "first established by the verdict of a jury" (sec. 2, art. XI); and this court has held, in effect, that the statutory authority for such condemnation must also provide for the swearing of such jury before they should enter upon such determination (*Lumsden v. Milwaukee,* 8 Wis. 485). Here, as indicated, the charter required the circuit court to impanel such "jury as in civil cases triable by jury, to determine whether or not it is necessary to take the land proposed to be condemned for

the public use." Sec. 6, subch. XX, ch. 59, Laws of 1891. This clearly implies that such jury must be impaneled and sworn as in civil cases. Secs. 2532–2544, R. S. It, moreover, suggests the form of the oath. *Ibid.* Nothing appearing to the contrary, it must be assumed that the jury were sworn before entering upon their duty as such in the matter. For a similar reason we must assume that the jury, upon being sworn, viewed the premises and returned their verdict as required by the charter.

It follows, from what has been said, that the circuit court acquired jurisdiction to render the judgment of condemnation, and the same thereupon became binding upon the relator.

It is contended that the statutes thus authorizing such condemnation are void, because no appeal is allowable from such judgment, and the same is only reviewable in this court upon *certiorari.* True, the constitution provides that " writs of error shall never be prohibited by law." Sec. 21, art. I, Const.; *State ex rel. Larkin v. Ryan,* 70 Wis. 683. It is conceded that that provision of the constitution has no application to this case, since the judgment of condemnation was not obtained by proceedings according to the course of the common law. *Crocker v. State,* 60 Wis. 553; *Buttrick v. Roy,* 72 Wis. 164. In other words, it is conceded that the proceedings are purely statutory. It necessarily follows that there can be no right to an appeal, in a case like this, unless it be given by statute. *In re Canal & Walker Sts.* 12 N. Y. 406; *King v. Mayor,* 36 N. Y. 183; *Norfolk S. R. Co. v. Ely,* 95 N. C. 77; *Appeal of Houghton,* 42 Cal. 35; Lewis, Em. Dom. § 536. The mere fact that errors may have intervened which might have been corrected on appeal is no ground for avoiding the judgment of condemnation upon *certiorari,* nor questioning it upon this appeal.

It is contended that the charter is void because it does

not provide a fair and impartial tribunal to assess the damages, nor for proper notice of such assessment, nor for taking evidence thereon, and in allowing benefits to be off-set against the value of the land taken. It is, in effect, conceded that the several steps in the assessment of such damages, mentioned in the foregoing statement, were each and all expressly authorized by the charter, and were taken strictly in accordance therewith. The tribunal thus pre-scribed for the assessment of such damages was the board of public works of the city, to consist of the city comptroller and two commissioners, each of whom were to be appointed by the mayor and confirmed by the common council. Each member of said board was required by the charter, before entering upon the duties of his office, to take and subscribe the oath provided for by the constitution, and to file the same with the city clerk. Subch. IV, X, ch. 59, Laws of 1891. Such oath was so taken and filed, and covered all duties of the board, including such assessment of dam-ages. *McIntyre v. White Creek*, 43 Wis. 624; *Powers v. Oshkosh*, 56 Wis. 665; *State v. Hogue*, 71 Wis. 384. Thus, each member of the board, in making such assessment, acted under the sanction of his official oath. Upon the as-sessment being completed by the board they were required, in effect, to give notice that their report of such assessment was open for review in their office, and would so continue for the space of twenty days, as prescribed, and that upon a day named therein said board would be in session to hear all objections that might be made to such assessment; that at the time so specified said board should hear all parties interested appearing before them, and reduce to writing all objections made and all evidence offered to sustain the same, and should have power to review, modify, and cor-rect said assessment as they might deem just; and there-upon a complete and final assessment should be made and filed by them with the city clerk, together with all such

objections and evidence, and proof of the publication of such notice. The charter further prescribed, in effect, that when such completed assessment should be confirmed by the common council, proceedings should be taken to collect the special tax as prescribed, and that the cost of each condemnation should be paid out of the fund therein designated. Each and all of these several steps were taken and acts performed as mentioned in the foregoing statement. The charter also provided, in effect, that any party aggrieved by any assessment of benefits or damages, or both, might appeal to the circuit court therefrom, within the time, in the manner, and upon the security prescribed in appeals from the decision of the common council upon claims, and like proceedings should be had thereon. Subch. XX. The relator took no such appeal, and apparently made no objection to such assessment nor any of such proceedings. The mere fact that the board of public works was composed of city officials did not make them less fair or impartial. They were acting under the responsibility of an official oath, and had no more interest in the matter than other citizens. We are constrained to hold that the board of public works was a fair and impartial tribunal to assess such damages; that the assessment was made upon proper notice, with full opportunity for hearing and taking evidence thereon. There is nothing in the constitution nor any statute requiring that such damages should be assessed by a jury of twelve men or any particular number, nor is it customary. Especially is this so where there is an opportunity of an appeal, as here. This is in effect conceded. In *Pearson v. Yewdall*, 95 U. S. 294, a jury of six persons to assess such damages was sustained. In *U. S. v. Jones*, 109 U. S. 519, Mr. Justice FIELD, speaking for the whole court, said: " The proceeding for the ascertainment of the value of the property, and consequent compensation to be made, is merely an inquisition to establish a particular fact

The State ex rel. Andrews vs. The City of Oshkosh.

as a preliminary to the actual taking; and it may be prosecuted before commissioners or special boards, or the courts, with or without the intervention of a jury, as the legislative power may designate. All that is required is that it shall be conducted in some fair and just manner, with opportunity to the owners of the property to present evidence as to its value, and to be heard thereon." The city charter provides for all these requirements. In a recent case in New Jersey it was held that " commissioners to appraise the value of the land to be taken for such use may be constitutionally appointed by the governor of the state, without notice to the land-owners." *Singer Mfg. Co. v. Heppenheimer*, 54 N. J. Law, 439.

It is true, the constitution provides that "the property of no person shall be taken for public use without just compensation therefor." Sec. 13, art. I. Manifestly, such compensation must be actually made, or the means provided whereby it can be certainly obtained, before the right to so take for public use is complete. In the case last cited it was held that, on payment of the fund into court, the right to take possession was complete. Here the city authorities provided the fund, and did everything they could to make the payment complete. Nothing was left but for the relator to accept the damages assessed and draw her money. Besides, where the taking is by a town or municipal corporation, such actual payment or deposit is unnecessary. *Smeaton v. Martin*, 57 Wis. 373, and cases there cited.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to quash the writ of *certiorari*.