THEODORE H. LIVINGSTON, APPELLANT, vs. NATHANIEL WEBSTER, APPELLEE.

1. Where, at a term of a circuit court, the parties to an action submitted it by agreement in writing to the court for decision without an intervention of a jury, and the court adjourns without trying it, but making an order continuing all causes not tried or otherwise disposed of, and after the term of the court the attorneys appear before the judge and submit the case to the judge for trial, both parties introducing evidence, and no objection is made by either to his trying the case, and he renders final judgment, his power to try the case under the act of February 29th, 1879, (§39, p. 339, McClellan's Digest,) cannot be questioned in the Supreme Court on appeal.

2. Where the evidence in an action of forcible entry under the forcible entry and unlawful detainer act does not show that the entry was forcible, but there is an entire absence of force from the entry, the action will fail.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion.

*Hartridge & Young* for Appellant.

*A. W. Cockrell & Son* for Appellee.

MITCHELL, J. This was an action of forcible entry brought by the appellee, plaintiff below, against the appel-

lant, defendant below, in Duval Circuit Court The complainant alleges that "the defendant hath forcibly turned him (plaintiff) out and withholds possession of certain real estate described as follows: Beginning at the south-east corner of Julia and Bay streets, city of Jacksonville, county of Duval and State of Florida, thence east along Bay street one hundred and sixty-one feet, thence south parallel with Julia street one hundred and twenty-nine feet, thence parallel with Bay street one hundred and sixty-one feet to Julia street, thence north along Julia street one hundred and twenty-nine feet to place of beginning, containing by estimation about one-half of an acre of land, with the appurtenances.

On the 26th day of November, 1887, and during a term of the court, counsel for the respective parties, by an agreement in writing, submitted the cause to the court for decision without the intervention of a jury. Afterwards, to-wit: on the 2d day of December, 1887, all cases then pending in court, including the case at bar, were continued until the next regular term. And afterwards, to-wit: on the 16th day of April, 1888, the court tried the cause and found for the plaintiffs as follows: "This cause was at the Fall term, 1887, of this court, in open court, submitted by the respective parties to the presiding Judge of this court for decision, a jury having been waived and the submission and waiver noted in open court. And came the parties, plaintiff and defendant, by their respective attorneys, and issue being joined whether the defendant, at any time within three years before the filing of the complaint herein, did forcibly enter upon the property mentioned in the complaint and turned the plaintiff out of the possession thereof, and whether the defendant continued to hold the possession thereof to the time of the filing the complaint herein; and thereupon evi-

dence was submitted by the respective parties plaintiff and defendant; and now upon consideration thereof, the Court finds that the defendant did within three years next before the filing the complaint in this cause, forcibly enter upon the real estate in the complaint mentioned and turn the plaintiff out of possession thereof, and that said defendant did continue to hold the possession thereof at the date of the said complaint; and that the court assessed the damages at twelve hundred and eighty-six and 65-100 dollars. It is therefore considered by the court that the plaintiffs do have and recover the possession of the following property lying in said county and State, and described as follows. (The metes and bounds are the same as those given in the first paragraph of this opinion). And also the sum of twelve hundred and eighty-six and 65-100 dollars damages as aforesaid, of and from said defendants. It is further considered by the court that said plaintiff shall have the writ of *habere facias possessionem* to be executed without delay, and also a writ of execution for his damages aforesaid, and his costs herein, taxed at four and 78-100 dollars." From this judgment the defendant appealed, and has filed the following assignment of errors: 1st. That the court did not have the power to try the case in vacation; 2d. That the court had no power to try the case after there had been a general order of continuance until the next term thereafter; 3d. That the evidence did not warrant the finding of the court; and 4th. That there was absolutely no testimony showing or tending to show the use of force in the entry.

The first two assignments may be considered together. Chapter 3121, laws of Florida, act of February 20th, 1879, expressly authorizes the Judges of the Circuit Courts of this State "to exercise in vacation any jurisdiction or power they are now authorized and empowered to exercise in term

time, except in cases requiring the intervention of a jury; and the said judges are also authorized and empowered, in cases requiring the intervention of a jury, to exercise the same jurisdiction and powers in vacation as they are now authorized and empowered to exercise in term time: *Provided*, the parties agree in writing to waive a jury." There can, in our opinion, be no doubt that the court was, under the above provision of the statute, authorized to try the cause at the time and in the manner that it was tried. The contention that the case could not be tried after it had been regularly continued cannot be maintained. The defendant without objection, appeared at the trial of the cause; the objection was never raised until it was raised in this court, which is too late, if there was ever any force in the objection.

The third and fourth assignments will be considered together. That the plaintiff had been in peaceable possession of the property in controversy, known as the "Park," from some time in the year 1881 until about the 6th day of September, 1886, we think cannot be denied; and as the entry by the defendant upon the premises is admitted, and as it is admitted that the rental value of the premises was $800 per annum, the only question to be decided is whether or not the entry by the defendant was " forcible," as alleged in the complaint.

David Gordon, a witness for the plaintiff, deposed that some time in the month of September, 1886, he went with the defendant, at about ten o'clock at night, to the Park, defendant opened the door, and "both defendant and I went in, and he told me to take charge of that property." Defendant entered the enclosure and the little summer house inside of the enclosure by a key; don't think the gate was locked; defendant put the key to the lock in the door and told me to take charge of it; the key to the gate was on

the same string with the key to the door, and I kept them; defendant told me that he wanted me to look after the place for him; he told me to not let any one man get the best of me. I locked the gate after defendant left, and remained on the premises and slept in the room; found some old blinds and a bed and some little things in the room. After that Mr. DuBois came there; we had some words; cursed each other, and he pretended like he would run me off, and at various times I had to stop a colored man from going in there. I saw no one in the yard when I went there; defendant and witness went in at the gate peaceable; did not use any force in going in; went in quietly; no one made any resistance. I got in and out of the house by use of the key; did not keep the gate locked all the time; half of the time it was open. Some time after I went in the key to the lock was changed by order of the defendant.

Louis DuBois, for plaintiff, deposed that about September 7, 1886, a young man named "Tom," a porter at the Everett saloon, was sleeping in the park; he did'nt come up in the morning, and they went to call him and he was gone, and when I went over there Mr. Gordon was in possession, he told me. This was the morning after the entrance by defendant—think it was. I was surprised to see Gordon there, and he told me I could not go in; that I could not go in without an order from Mr. Livingston, so we had some few words. He told me he had authority to keep me out, and he seemed to be in possession, and I never went in until after the fence was taken down. I had exclusive control of the Park for Mr. Webster from May 6, 1886, until Gordon went in. I put "Tom," the porter, in possession, and he had been in possession two or three months. He had all his "traps" in there. I put "Tom" in there to save his room rent. He was occupied about the

hotel of which Mr. Webster was proprietor, and I put him in charge of the Park as a matter of charity, merely out of kindness and to save rent to him. I retained the key to the room. Tom departed, and I have not seen him since. The tenants of plaintiff knocked the fence down. Don't know how Tom got in the room; the key was in my possession; I kept the gate locked and the key in my pocket. Tom was in the employ of Mr. Rigney. I knew that Tom was using keys to get in and out.

Nathaniel Webster deposed for plaintiff: I put DuBois in possession of the Park. I had been in possession since 1881. When I put Mr. DuBois in possession of the Park, I had another set of keys, which I turned over to Mr. Rigney, as he had some goods stored in the house at the Park, and I gave him a key to go in.

T. H. Livingston in his own behalf, deposed: On the evening of September 6, 1886, I think it was, I met Captain Masters on the street, and he said to me, I have got the keys to your property up there. I said: You have, eh; and I said I would like to have them, and he walked back and opened the gate and opened the door, and turned the keys over to me. My impression is that the gate was unlocked at the time when I went in there. No force whatever was used in going into the Park or house. Captain Masters unlocked the ·door and afterwards locked it and gave me the key. No one was on the lot at the time, and I met with no resistance from any one. There was no disturbance upon my going in. This was between 7 and 9 o'clock in the evening. The streets were lighted, and I went in openly. I gave Gordon the keys I got from Masters and put him in charge of the property. I had no interview with Gordon previous to putting him in charge with reference to this matter.

R. T. Masters, for defendant, deposed: I gave keys to Mr. Livingston, and I went with him to the Park that night. The gate was locked and I unlocked it and invited Mr. Livingston in. The house door was locked and I unlocked it. I gave the keys to Mr. Livingston. I got the keys from the porter named Tom, who stayed at the Everett Bar. Tom had been staying at the Park. Tom gave me the keys; I gave him nothing for them; he gave them to me to give to Mr. Livingston. Tom left that night, and told me he was going to Charleston.

This is, in substance, the evidence in the case, and the question is: Does it show a " forcible " entry on the part of the defendant? The plaintiff elected to bring his suit for forcible entry and unlawful detainer, and it was incumbent upon him to show that the defendant " forcibly " entered the premises in dispute, because " force " is the gist of the action in such cases.

It is insisted in argument that the entry by the defendant by means of keys was a " forcible " entry, and in support of this proposition the case of Greeley vs. Spratt, 19 Fla., 644, is cited. In that case, the defendant, in the night time entered Spratt's law office by means of skeleton keys, and after entering he threw Spratt's office furniture out of the room or office, and forcibly prevented Spratt from entering the office. The entry and the throwing the goods out of the office was one and the same transaction, and taken together they were of such character as to inspire apprehension of violent acts towards Spratt and his property, and therefore, a case of forcible entry was made out. 1 Russell on Crimes, (9 Am. Ed.), 426.

It is not necessary, however, that the force or violence should be used against the occupant; forcibly breaking into a house in the absence of the occupant, intimidating him

by the use of threats or menace, and generally any circumstances of actual violence or reasonably exciting fear of such violence, either to person or to property, will be sufficient to constitute a forcible entry. 8 Am. & Eng. Enc. of Law, 107 and 108 and cases cited. It is further contended for the appellee that the evidence shows a conspiracy or collusion between the defendant and Tom. Now, if Tom was the tenant of the plaintiff, and the defendant through collusion with Tom, entered the premises, it would be such an entry as to make it forcible. Palmer vs. Hunter, 45 Mich., 337. But in the case at bar there is no evidence that Webster ever at any time recognized Tom as his tenant, nor is there any evidence of any collusion between Livingston and Tom.

We are aware that there are some authorities to support the position of the appellee that the entry of the premises by means of keys was such an entry as to make out a case of forcible entry, but the great current of decisions is against this proposition, for in all cases, unless there is some use of force, or of threats and intimidation, there is no forcible entry. Saunders vs. Robinson, 5 Met., 343; McMinn vs. Bliss, 31 Cal., 122; Hendrickson vs. Hendrickson, 12 N. J. L., 202.

In the case at bar there is no evidence to show that the entry by defendant was forcible; but on the contrary, the evidence for both parties to the suit is, that the entrance was peaceable, and the conduct of the defendant after entering only showed a disposition on his part to peaceably retain possession, and, in our opinion, the action of forcible entry did not lie.

The judgment of the court below is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.