384    SUPREME COURT OF WISCONSIN. [June

State ex rel. Allis v. Wiesner, 187 Wis. 384.

STATE EX REL. ALLIS, Relator, vs. WIESNER and others, Respondents.

*April 10—June 22, 1925.*

*Jury: What constitutes: Constitutional requirements: Words as used in constitution: Construction: Eminent domain: Nature of proceedings: Jury trial not required: Necessity for taking: Who determines: Milwaukee city charter: Provisions as to jury: Validity.*

1. Where technical terms were in use prior to the adoption of the constitution, such terms were used in the constitution in the sense they were understood at common law.  p. 394.
2. Sec. 5, art. I, of the constitution, relative to trials by jury in "all cases at law," does not apply to eminent domain proceedings, which are purely statutory.  p. 395.
3. Sec. 2, art. XI, Const., confers upon a jury the power to determine the question of necessity in all cases where municipal corporations take private property for public use, and thus removes the question from the legislative field; and by the term "jury" as used in said section was intended a body of twelve men charged with the duty of finding certain facts under the direction of a court.  p. 396.
4. The "jury" to determine the necessity of the taking, as provided for in secs. 3, 3a, 4, and 5, ch. VI, of the Milwaukee city charter—which is selected by a circuit judge, is not controlled in its deliberations by a court, keeps no record, and proceeds largely on its own motion,—is not a jury within the meaning of that term as used in sec. 2, art. XI, of the constitution.  p. 397.
5. Sec. 2, art. XI, Const., providing that municipal corporations shall not take private property without the verdict of a jury, does not require a common-law jury trial, since the power of eminent domain is exercised by a special proceeding.  p. 398.
6. The doctrine of practical construction of a constitutional provision does not apply where there is no ambiguity.  p. 398.

THIS IS AN APPLICATION to this court for a writ of prohibition commanding the respondents to desist from acting as a jury to determine the necessity of taking the home of the relator in the city of Milwaukee for park purposes.  It is conceded that all proceedings leading up to the appointment of the respondents as jurors have been in accordance with the provisions of the charter of the city of Milwaukee, but it

is claimed by the relator that such provisions in so far as they relate to the selection, deliberation, and report of such charter jury are in violation of art. I, sec. 5, and art. XI, sec. 2, of the constitution of the state of Wisconsin. The respondents, appearing therefor by the city attorney of the city of Milwaukee, have interposed a motion to quash the writ, which is equivalent to a general demurrer.

It appears that the relator is the owner of a dwelling of the value of $70,000, which is situated upon property which commands an unimpaired view of Milwaukee Bay and Lake Michigan; that the common council of the city of Milwaukee has declared by resolution its intention to acquire blocks numbers 106 and 107 for the purpose of enlarging Juneau Park, and for the purpose of acquiring the title thereto has instituted proceedings under the provisions of ch. VI of the charter of the city of Milwaukee.

In accordance with the provisions of the charter the city of Milwaukee caused a notice to be served upon the relator by the terms of which the relator was notified of the resolution adopted by the common council looking to the condemnation of blocks 106 and 107, his premises being a part of said blocks. The relator was further notified that application would be made on the 31st day of January, 1925, to the Honorable WALTER SCHINZ, one of the judges of the circuit court for Milwaukee county, for the selection of a jury to view said premises and to determine whether or not it is necessary to take said premises for the purposes specified in said resolution, which is therein declared to be "for the purpose of an addition to Juneau Park." Upon the day appointed for the hearing the relator appeared and objected to all proceedings in said court for the reason that they were in violation of his constitutional rights. His objections were overruled and proper exceptions taken and the relator declined to further participate in the selection of a jury. The court proceeded in the manner prescribed in the charter to impanel a jury, and in response to a *præcipe* the persons so chosen as the jury, the respondents here, appeared

in said court on the 14th day of February, 1925, for the purpose of being sworn and examined, at which time and before the swearing of the jury the relator appeared and moved that the entire panel be dismissed, assigning as a reason therefor that the court has not power to call or swear a jury for the purposes of the city charter and that any attempt to do so is an invasion of the constitutional rights of the property owners. This motion was denied and exception taken. It further appears that twelve men were finally sworn as jurors and that the judge thereupon proceeded to instruct them relative to their duties and specifically advised them that "either of the jurors or the city attorney may administer the proper oath to any witness produced before the jury;" and further advised that "it is not necessary to reduce evidence to writing nor to return the same with your report;" and the court likewise instructed in substantially the language of the charter: "You are to make a report and return of your proceedings to the common council, which report shall be signed by the jurors and shall state whether or not, in their judgment, it is necessary to take the premises in question for the public use proposed." Thereupon the foreman of the jury was elected and the jury retired. In due course the city attorney served upon the relator a notice that, for the purpose of passing upon the question of the necessity of taking the lands in question, the jury would "meet at the jury room in the city attorney's office, on the eighth floor of the city hall in said city, on Tuesday, the 10th day of March, A.D. 1925, at 9 o'clock a.m.;" which notice was signed by John M. Niven, city attorney. Thereupon the relator made application for the issuance of a writ of prohibition in the alternative.

For the relator there was a brief by *Albert K. Stebbins,* counsel, *Bloodgood, Kemper & Bloodgood,* attorneys, and *Jackson B. Kemper,* of counsel, all of Milwaukee, and oral argument by *Mr. Stebbins* and *Mr. Kemper.*

For the respondents there was a brief by *John M. Niven* and *Clifton Williams,* both of Milwaukee, and oral argument by *Mr. Williams.*

A brief was also filed by *E. L. McIntyre* and *Walter H. Bender,* both of Milwaukee, as *amici curiæ.*

ROSENBERRY, J.   Art. I, sec. 5, of the constitution of the state of Wisconsin provides that "The right of trial by jury shall remain inviolate; and shall extend to all cases at law; without regard to the amount in controversy.."

Art. XI, sec. 2, provides: "No municipal corporation shall take private property for public use, against the consent of the owner, without the necessity thereof being first established by the verdict of a jury."

On behalf of the relator it is contended that "the verdict of a jury" under sec. 2, art. XI, must be a finding, under the guidance of a judge, as to whether or not there is a public necessity for the taking of the premises described; that the proceeding must be had in a court of competent jurisdiction, presided over by a judge qualified to instruct a jury in matters of law and to pass upon the competency, relevancy, and materiality of all testimony submitted to the jury for consideration; that at the conclusion of the testimony and prior to the verdict the jurors must receive from a judge qualified to instruct some charge relative to the probative value of the testimony submitted to them and an instruction in matters of law relative to the subject under consideration, after which a verdict must be returned into a court of competent jurisdiction.

On behalf of the respondents it is contended that sec. 5, art. I, has no application for the reason that a proceeding under the law in question is not an "action at law" and that the constitutional guaranty of the right to a jury trial does not in any way apply to an eminent domain proceeding. It is further argued on behalf of the respondents that a jury provided for under the provisions of the charter of the city of Milwaukee sufficiently satisfies the requirements of sec. 2, art. XI.

Thus there is presented for determination two questions: (1) What is meant by the term "jury" as used in sec. 2, art. XI?   (2) What constitutes a verdict?   The material

parts of the law are to be found in ch. VI of the Milwaukee city charter, 1914 edition, which are for convenience printed in the margin,[1] being sections 3, 3a, 4, and 5.    A

[1] Section 3.    (Ch. 227, Laws 1879; ch. 524, Laws 1887.)    The common council shall thereupon, by resolution, direct the city engineer to make and file with the city clerk an accurate survey and plat of the proposed change or improvement and of the lands proposed to be taken therefor, defining separately each parcel and indicating upon such plat the location of any improvements upon said premises, and said city clerk shall return said plat and survey to the common council.    The common council shall thereupon direct the city clerk to cause notice of such application or resolution to be given to owners and occupants of the lands proposed to be taken, which notice shall contain a description of the lands proposed to be taken, and shall state that at a certain time and place therein named, which time shall not be less than four weeks after the first publication thereof, application will be made to the circuit or superior court of Milwaukee county or to the judge of either of said courts for the selection of a jury to view said premises and to determine whether or not it is necessary to take said premises for the purposes specified in said petition or resolution.    Such notice shall be published in the official papers of said city for four weeks, at least once in each week, prior to the time therein fixed for the appointment of jurors, and shall be served at least twenty days prior to the time therein fixed for the appointment of jurors, upon each of the owners and occupants of the land proposed to be taken, residing in the city of Milwaukee and known as it shall appear by the petition or resolution, personally by delivering to and leaving with him a copy of such notice if he can be found in the city of Milwaukee, and if he cannot be found in said city, then by leaving a copy of such notice at his usual place of abode with some member of his family of suitable age and discretion, or if such place of abode shall be closed, or no person of suitable age and discretion found there, then by posting a copy of said notice on the principal outer door of such place of abode.    Such service shall be made by the chief of police or some police officer of said city, who shall make return under oath, in writing, of the facts of such service, which return shall have the same effect as a sheriff's return of the service of a summons in a civil action.    As to unknown owners of such land proposed to be taken, and owners, not residing in the city of Milwaukee, such publication in the official paper shall be a sufficient service of such notice upon them.    At the time and place fixed for such hearing and upon the presentation of such application or of such resolution and upon proof of the publication and service of the notice hereinbefore required, the said court or the judge thereof, shall thereupon make a list of twenty-four reputable freeholders, residents of the city of Milwaukee, but not residents of the ward in which the premises proposed to be taken may be situated, and not interested in the result of such taking. The said court or judge shall thereupon hear and decide any challenge for cause or favor made, as to any of said freeholders and if sustained shall replace the name with an unobjectionable juror.

State ex rel. Allis v. Wiesner, 187 Wis. 384.

consideration of these provisions discloses that after the ini-
tial resolution and the making of a survey and plat defining
the lands proposed to be taken, the common council directs

until the list shall be perfected. Thereupon, under the direction
of such court or judge, each party, the city of Milwaukee by its
representatives, constituting one party, and the owners of land
or their agents present, or if none be present or they disagree a
disinterested person appointed by the court or judge, constituting
the other party, shall challenge six names, one at a time alternately,
the city beginning. To the twelve jurors remaining such court or
judge shall issue a precept requiring them at an hour and day
named, not more than fifteen nor less than three days thereafter,
to appear before him to be sworn and serve as a jury to view
lands, and at the same time shall publicly adjourn the proceedings
to the time and place so named; such precept shall be served by the
chief of police or any police officer of the city of Milwaukee at
least one day before such appointed time, by reading the same to
each such juror, or by leaving a copy of such precept at his usual
place of abode in said city, in the presence of a member of his
family. The jurors summoned shall appear at the time and place
named, and if any be excused by the court or judge, or fail to
attend, he shall publicly adjourn the proceedings to some time and
place and name other disinterested freeholders, not residents of
the ward in which the premises proposed to be taken or vacated
are situated, in their stead to be forthwith in like manner sum-
moned, and to appear at the time and place fixed by said adjourn-
ment until twelve jurors shall be obtained. The said jurors shall
thereupon, before they proceed to view the premises proposed to be
taken or vacated, severally take and subscribe an oath or affirmation
before the court or judge, to the effect that they will faithfully
and honestly discharge the duties imposed upon them, and deter-
mine whether or not it is necessary to take or to vacate the prem-
ises in question for the public use designated in the application or
resolution. The court or judge shall then issue an order in writing,
directed to said jurors, requiring them within thirty days from the
date thereof, to view said premises, to be specified in such order,
and to make return under their hand to the common council whether
or not, in their judgment, it is necessary to take or to vacate said
premises for the purposes specified in such application or resolution.
It shall be the duty of every person appointed as such juror to
act, unless excused for reasonable cause by the court or judge
thereof appointing him, and every person duly summoned or notified
to act as required by this chapter, who shall, without being so
excused, neglect or refuse to perform his duty as such juror,
shall be guilty of a misdemeanor, and shall, upon conviction thereof,
be fined not less than twenty nor more than one hundred dollars;
and it shall be the duty of the city attorney to prosecute any per-
son so offending.

Section 3a. (Sec. 926—6, Stats. 1911; ch. 198, Laws 1895.)
Whenever in any such city the requisite number of jurors shall
have been summoned to appear before any court or judge to be
sworn and serve as a jury to view lands for the purpose of deter-

the city clerk to cause notice to be given "to the owners and occupants of the lands proposed to be taken" that, at a certain time and place, an application will be made "to the circuit court . . . of Milwaukee county or to the judge of said court" for the selection of a jury to view the premises, and to determine whether or not it is necessary to take said premises for the purposes specified in said petition or resolution. Provisions are made for the service of this notice and also for its publication. The charter then provides that—

"At the time and place fixed for such hearing and upon the presentation of such application or of such resolution and upon proof of the publication and service of the notice herein above required, the said court or the judge thereof shall thereupon make a list of twenty-four reputable freeholders, residents of the city of Milwaukee, but not residents of the ward in which the premises proposed to be taken may be situated and not interested in the result of such taking."

mining the necessity of taking the same for public use, or vacating any highway, streets, alleys or public grounds, and part of them shall have appeared before said court or judge for the purpose of taking the proper oath or affirmation and others shall fail to attend or be excused, the court or judge shall forthwith appoint the requisite number of other qualified jurors to serve in the place of such so excused or failing to attend. Any juror so appointed may be examined by any person present and interested in such taking or vacating, and if it shall appear to the court or judge that any such juror or jurors are disqualified to act he or they shall be excused and a number of other jurors shall be thereupon appointed until the requisite number shall be obtained; and the said jurors shall, before they proceed to view the premises proposed to be taken or vacated, severally take and subscribe an oath or affirmation before the court or judge that they will faithfully and honestly discharge the duties imposed upon them and determine whether or not it is necessary to take or vacate the premises in question. Whenever any such jurors shall have met for the purpose of hearing persons interested and some of such jurors are absent at the time set for such hearing and for one hour thereafter, the jurors present shall have power to publicly adjourn to the same place for a period not exceeding twenty days, and the city attorney shall report the names of such absent juror or jurors to some police officer of the city, together with the place and the hour to which such jury has adjourned, and such police officer shall thereupon notify said absent juror or jurors of such adjournment and direct them to be present at the time and place fixed at the time of such adjournment.

Section 4. (Ch. 311, Laws 1876; ch. 227, Laws 1879; ch. 524, Laws 1887.) The said jurors when so selected and sworn, shall immediately proceed in a body to view the premises proposed to

State ex rel. Allis v. Wiesner, 187 Wis. 384.

Provisions are then made for challenges for cause or favor of any of these freeholders and for replacing their names until the list is completed. Thereupon the city of Milwaukee on the one part and all the owners together on the other part strike names from the list, each side being permitted six strikes. To the twelve "jurors" remaining the court or judge issues a *præcipe* requiring them to appear before him to serve as a jury in the matter. The jurors thus summoned appear at the time and place named. If any are excused or fail to appear he appoints "disinterested freeholders, not residents of the ward in which the premises proposed to be taken or vacated are situated, in their stead, to be forthwith in like manner summoned and to appear at the time and place fixed by . . . adjournment until twelve jurors shall be obtained." Thereupon the so-called jurors are sworn to faithfully and honestly discharge the duties imposed upon them and determine the question of necessity

be taken or to be vacated, and the city engineer or his deputy shall, upon the request of the city attorney, proceed with said jury to said premises and point out to said jurors the several places where the lines of the proposed improvement are located according to the survey hereinbefore directed to be made. The city attorney shall thereupon prepare a notice in the following or some equivalent form:

In the matter of the application for the (opening, extension, enlarging or widening, as the case may be) of ——, in the —— ward of the city of Milwaukee.

Notice is hereby given that the jurors lately appointed and summoned in the above matter, to pass upon the question of the necessity of taking the lands described in said application for the purposes therein prayed, have viewed said lands, and will meet at —— on the —— day of ——, A. D. ——, at which time and place all persons having any interest in the lands proposed to be taken may be heard before such jurors, and all evidence proposed to be taken may be heard before such jurors, and all evidence produced before them upon said question will be considered.

Dated at Milwaukee, the —— day of ——, A. D. ——.

——————, City Attorney.

Such notice shall be published once in the official papers of the city and shall be served upon the owners and occupants of the lands proposed to be taken, and known, the same as the notice provided for in section 3 of this chapter, and shall be returned in like manner as said notice is therein required to be returned, all of which shall be done prior to the day fixed in said notice for the meeting of the jurors, and publication of said notice shall be sufficient service thereof upon owners of lands proposed to be taken, not known, or not residing in the city of Milwaukee. At the time

of the taking of the property. They are ordered and required, "within thirty days from the date thereof, to view said premises to be specified in such order, and to make return under their hand to the common council whether or not in their judgment it is necessary to take . . . said premises for the purposes specified in such application or resolution." Sec. 3, ch. VI, as aforesaid.

The jurors thereupon proceed to view the premises and then fix a date for meeting to hear persons interested. A provision is made for the publication and service of such notice. The charter then provides that—

"At the time and place designated in said notice for that purpose, the said jurors shall meet and hear all persons interested in the lands proposed to be taken, and shall hear all evidence which shall be produced before them on the

and place designated in said notice for that purpose, the said jurors shall meet and shall hear all persons interested in the lands proposed to be taken, and shall hear all evidence that shall be produced before them upon the subject of the necessity of taking the land described in the order for the purpose therein stated, and may at the instance of any one or more of their number, summon and examine witnesses upon the same question, and for that purpose either of said jurors may issue a subpœna, and either of the jurors or the city attorney may administer the proper oath to any witness produced before said jury. Said jurors may if necessary, adjourn such hearing from day to day. If any such jurors shall be absent at the time set for such hearing, and for one hour thereafter, the jurors present shall have power to publicly adjourn their proceedings to the same place, for a period not exceeding twenty-four hours, and the city attorney shall report the names of such absent jurors to the chief of police or to any of the police officers of the city, together with the place and hour to which such jury has adjourned, and the said chief of police or police officer shall thereupon notify such absent juror or jurors of such adjournment and direct them to be present at the time and place fixed by such adjournment. It shall not be necessary for said jurors to reduce the evidence produced before them to writing, nor to return the same with their report. Said jurors shall make a report of their proceedings to the common council within the time limited in the precept, which report shall be signed by them respectively, and shall state whether or not, in their judgment, it is necessary to take the premises in question for the public use proposed in the petition or resolution; provided, further, that in all cases where lands shall be condemned without a petition, the city attorney shall prepare a list of the owners and occupants of property to be taken, so far as the same are known, and shall certify the same to be correct, to the

State ex rel. Allis v. Wiesner, 187 Wis. 384.

subject of the necessity of taking the land described in the order for the purpose therein stated, and may at the instance of any one or more of their number, summon and examine witnesses upon the same question. . . ."

They are given the power to issue subpœnas and administer oaths and adjourn from day to day. The section provides:

"It shall not be necessary for. said jurors to reduce the evidence produced before them to writing, nor to return the same with their report. Said jurors shall make a report of their proceedings to the common council within the time limited in the precept, which report shall be signed by them respectively, and shall state whether or not, in their judgment, it is necessary to take the premises. in question for the public use proposed in the petition or resolution." Sec. 4, ch. VI, aforesaid.

best of his knowledge; and notice of the selection of the jury and of the meeting of the jury shall be given, as in the case of condemnation proceedings upon petition; provided further, that no resolution shall be passed or petition granted in any case for the condemnation of land in said city without the affirmative vote of both the aldermen of the ward in which the land proposed to be taken shall be situated.

Section 5. (Ch. 524, Laws 1887; ch. 290, Laws 1889.) Should the jury report that it is necessary to take such premises, the common council shall enter an order among its proceedings confirming the whole of said report or any part thereof; and the common council shall direct the board of public works, within one month thereafter, or such further time as may be deemed proper, to view such premises at such time as the board may agree upon, of which at least three days' notice shall be given by publication in the official papers, for the purpose of ascertaining and determining the amount of damages to be paid to the owner or owners of the property proposed to be taken, and also what lands or premises will be benefited by such taking, and to make report of their assessment of such damages and benefits to the common council. Said board may obtain the testimony of witnesses as to the facts in the case, in. the same manner as provided in section 4 of this chapter, and shall hear such testimony as may be offered by any party interested, which testimony shall be reduced to writing by one of the members of said board upon the request of any person so interested; and the said board shall determine and assess and return such damages and benefits in the manner hereinafter directed. In case either member of said board of public works shall be interested in the premises, or in any property affected by such proceedings, it shall be the duty of the common council to appoint some disinterested person to act in his stead.

Following the decision in *Day v. Buckingham,* 87 Wis. 215, 58 N. W. 254, it has been consistently held by the judges of the circuit courts that in these proceedings "the judge" does not sit as a court. Does a body of men thus brought together by a judge constitute a jury within the meaning of sec. 2, art. XI? Such a group so clearly falls outside of the ordinary or common conception of what constitutes a jury at common law that the burden of establishing that it is a jury falls upon those who assert it. Sec. 13 of art. XIV provides:

"Such parts of the common law as are now in force in the territory of Wisconsin, not inconsistent with this constitution, shall be and continue part of the law of this state until altered or suspended by the legislature."

It is hardly necessary to make reference to this provision because it is commonly accepted that where technical terms were in use prior to the adoption of the constitution, such terms were used in the constitution in the sense in which they were understood at common law. Counsel for respondents recognize the logic of the situation and urge that "it is a historical fact that the word 'jury' was carelessly used around the time of the adoption of the constitution in 1848 in connection with eminent domain matters such as highway openings, and had been very carelessly used by the law-makers during a period of years shortly preceding the adoption of the constitution."

Reference is made to territorial laws, to sec. 32 of the Racine city charter of August 8, 1848, and to secs. 57 and 62, ch. 16, of the Revised Statutes of 1849. Other early statutes are referred to and we are cited to the following decisions: *Lumsden v. Milwaukee,* 8 Wis. 485; *Hood v. Finch,* 8 Wis. 381; *Soens v. Racine,* 10 Wis. 271; *Seifert v. Brooks,* 34 Wis. 443; *State ex rel. Flint v. Fond du Lac,* 42 Wis. 287. In none of the cases cited, however, was the question presented by the record in this case raised, and in each of the cases referred to it was held that the particular proceedings attacked were for one reason or another unconstitutional and void.

In *Brandt v. Milwaukee,* 69 Wis. 386, 34 N. W. 246, the court held that by ch. 184 of the Laws of 1874 there was vested in the common council of the city of Milwaukee exclusive power to vacate streets and alleys within the city limits. Referring to the charter provisions the court said: "The manner of proceeding for taking land for the use of a street is clearly prescribed, and seems to afford ample and sufficient protection against all abuse of the power." The question of the constitutionality of the act, however, was not under consideration.

In *State ex rel. Andrews v. Oshkosh,* 84 Wis. 548, 54 N. W. 1095, the sufficiency of the notice prescribed by the charter of that city was under consideration, and it was held that personal service of the notice satisfied the requirements of sec. 1 of art. XIV of the amendments to the constitution of the United States in regard to due process of law.

It may be conceded that sec. 5 of art. I does not apply to eminent domain proceedings, for they are, as said in *State ex rel. Andrews v. Oshkosh, supra,* purely statutory and not within the classification of cases at law as that term is used in sec. 5, and we confine ourselves to a consideration of what is meant by the verdict of a jury as that term is used in sec. 2, art. XI, for that is applicable to any proceeding or action by virtue of which a municipal corporation takes private property for public use. It would be, as said in *Norval v. Rice,* 2 Wis. 22, a bootless task to trace the origin of trial by jury. See Taswell & Langmead, Eng. Const. History, p. 169.

At this point we call attention to a divergence between the law of this state and that of many states respecting the determination of the question of public necessity. In *Chicago & N. W. R. Co. v. Morehouse,* 112 Wis. 1, 87 N. W. 849, it was said:

"A principle of the first importance is this: Where the constitution, as in this state, does not reserve to the courts, as an original question, the determination of whether a particular use shall be deemed public, the primary inquiry in that regard is for the legislature; and its judgment, when

expressed, is deemed to be beyond question by any judicial tribunal if there is any reasonable ground to support it."

See *Newcomb v. Smith*, 2 Pin. 131; *North Laramie L. Co. v. Hoffman* (U. S.), 45 Sup. Ct. Rep. 491.

It was well understood at the time the constitution was adopted, as it is now, that the question of what constitutes a public necessity is primarily one for the legislature. It is apparent, therefore, that the constitutional convention intended by the provisions of sec. 2, art. XI, to confer upon a jury the power to determine the question of necessity in all cases where municipal corporations should take private property for public use and thus to remove it from the legislative field. Having in mind the state of the law at the time of the adoption of the constitution, it is not conceivable that the framers of that document intended to use the term "jury" other than as applicable to a body of twelve men charged with the duty of finding certain facts under the direction of a court. Had the framers of the constitution intended to provide for a jury of inquest, one quite as well known at the common law as a petit jury, they would have used that term. In this connection we cannot do better than quote from the opinion of the court in *Paul v. Detroit*, 32 Mich. 108. Referring to a somewhat similar provision in the constitution of Michigan, Judge CAMPBELL in that case said:

"This provision is not found in constitutions generally, and was never known in Michigan until the adoption of the constitution of 1851. Before that, neither jury nor commissioners had any duty to perform except assessing damages, and the prerogative of taking property on their own estimate of its necessity was exercised by legislatures or those persons or corporations whom they allowed to act in the matter.

"The change was made from a well founded belief, founded on experience, that private property was often taken improperly and without any necessity, and that the pretense of public utility was often a cloak for private aggrandizement. Ways were forced through private property to enrich the owners of other property, who were enabled by intrigues and sinister influences to induce municipal bodies to use the

State ex rel. Allis v. Wiesnèr, 187 Wis. 384.

public authority to subserve their private schemes. The system was abused to the oppression of individuals by corruption and bargaining, and the sacredness of private property, and its immunity from any interference not required by actual public exigencies, ceased to be respected.

"The constitution has changed this by requiring the whole subject to be determined by a jury of freeholders; so that each case shall be determined by a separate tribunal summoned expressly for the purpose, who must be unanimous in their views before any land can be taken; who must act openly and before all concerned, in hearing and receiving testimony; who cannot listen to private persuasion, and where any attempt to influence them will subject the offender to severe and disgraceful punishment. All these safeguards are implied in the use of the term 'jury;' and no action, by laws, or by proceedings under them, can be maintained, if any of these securities are impaired or disregarded."

While under the provisions of the Milwaukee charter a body of twelve men is provided, they do not, under the provisions of that instrument, constitute a jury within the meaning of that term as used in the constitution. The judge is made use of for the purpose of selecting the individuals who shall compose the body. As has been uniformly held by the circuit court for Milwaukee county, the court has no power under the act to direct the deliberations of the jury. After they are impaneled they proceed largely upon their own motion, by a view of the premises, to determine the question of necessity. No record of their proceedings is made. When their determination is filed it rests upon no record, and cannot be reviewed by *certiorari* or otherwise because there is nothing to review. While it has the form of a jury it is in fact an inquisitorial body. From the earliest time juries have acted as an arm of the court. While there can be no doubt that the legislature might delegate its authority were it not for the constitutional restrictions, it must provide for the taking of private property by municipalities by verdict of a jury. We have no difficulty in arriving at the conclusion that the body provided for under the provisions of the charter of the city of Milwaukee, to which reference has been made, is not a jury within the meaning of that term as used in sec. 2 of art. XI.

Having arrived at this conclusion it is not necessary for us to discuss or specially consider what is meant by a verdict. Reference, however, is made to the following cases: *Shenners v. West Side St. R. Co.* 78 Wis. 382, 47 N. W. 622; *McBean v. State,* 83 Wis. 206, 53 N. W. 497; *James v. State,* 55 Miss. 57; *Hawley v. Barker,* 5 Colo. 118; *Simmons v. Hamilton,* 56 Cal. 493; *Davis v. Delaware Tp.* 41 N. J. L. 55. The sections of the charter referred to do not provide for the taking of a verdict of a jury "as to the question of public necessity" and are therefore in contravention of the constitutional provision.

We do not hold that there must be a jury trial in the sense in which that term was used at common law. It is quite clear that the process by which the power of eminent domain is exercised is under our law a special proceeding. The requirement of the constitution is that there shall be a verdict of a jury and not a jury trial. We call attention to this in order that there may be no misunderstanding as to the extent of the holding in this case.

We are met by the argument on behalf of the respondents that under the doctrine of *Dean v. Borchsenius,* 30 Wis. 236, "the uninterrupted practice of a government prevailing through a long series of years and the acquiescence of all its departments, legislative, executive, and judicial, sometimes become imperative even on constitutional questions." Citing also *State ex rel. Hudd v. Timme,* 54 Wis. 319, 11 N. W. 785; *State ex rel. Hessey v. Daniels,* 143 Wis. 649, 128 N. W. 565; *State ex rel. Van Alstine v. Frear,* 142 Wis. 320, 125 N. W. 961; *State ex rel. Postel v. Marcus,* 160 Wis. 354, 152 N. W. 419.

The difficulty with the argument, however, is that this provision has not been interpreted uniformly, as contended by the respondents. While it is true no case has been brought into court questioning the validity of the provisions of the charter of the city of Milwaukee under consideration here, a consideration of the law of the state indicates that there has been no uniform interpretation of the provision such as is contended for by the respondents. In any event, the

doctrine of practical construction does not apply where there is no ambiguity. *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 151 Wis. 520, 139 N. W. 396.

In the consideration of this case we have been greatly aided by the careful and thorough briefs filed by counsel upon both sides. We commend counsel particularly ` for providing us with a careful and thorough legislative history of the subject.

*By the Court.*—Let the writ issue.