VILLAGE OF BANGOR, Respondent, vs. HUSSA CANNING &
PICKLE COMPANY, Appellant.

*April 6—May 10, 1932.*

For the appellant there was a brief by *Olin & Butler*, and oral argument by *R. M. Rieser,* all of Madison.

For the respondent there was a brief by *Loomis & Roswell* of Mauston and *L. J. Brody* of La Crosse, and oral argument by *O. S. Loomis.*

WICKHEM, J.    The first serious question in this case relates to the appealability of the order.   This was a proceeding under ch. 197, Stats., entitled "Municipal Acquisition of Utilities."   In brief, the chapter provides that a municipality shall have power to construct and operate a utility and to purchase the same, and to acquire the property of any public utility engaged exclusively in furnishing light, heat, water, and power to the municipality.   It is provided that if the municipality shall have determined to acquire a plant oper-

ated under an indeterminate permit, and if the public utility shall not consent to the taking over of the plant by the municipality, "such municipality shall bring an action in the circuit court against the public utility for an adjudication as to the necessity of such taking by the municipality. Unless the parties waive a jury, the question as to the necessity of the taking of such property by the municipality shall be submitted to a jury." Upon a finding by the jury that a necessity exists for the taking of such plant, then the municipality is required to give speedy notice of such determination to the commission, and it is thereafter required that the commission shall set a time and place for hearing as to the amount of compensation to be paid. The commission thereupon is required to certify to the municipal council the amount of compensation to be paid and the terms and conditions of purchase which it shall ascertain to be reasonable. It is provided further (sec. 197.06) that "Any public utility or the municipality or any bondholder, mortgagee, lienor or other creditor of the public utility, being dissatisfied with such order, may prosecute an action to alter or amend such order or any part thereof, as provided in sections 196.41 to 196.48."

Thus ch. 197 provides a complete scheme of condemnation of public utilities by the municipality. One of the steps in the process is what is denominated an "action in circuit court" for an adjudication as to the necessity of the taking. In this action the verdict of a jury is taken upon the issue of necessity. There is, however, no provision for or contemplation that a judgment shall follow the verdict. The verdict of the jury is simply a step in the condemnation proceedings. It is urged by appellant that this action in circuit court is a special proceeding, and that an order denying a new trial is a "final order affecting a substantial right made in special proceedings," under sec. 274.33, par. (2), Stats., and that by this last named section it is expressly made appealable.

In the case of *Menasha v. Wis. T., L., H. & P. Co.* 161 Wis. 605, 155 N. W. 142, the city of Menasha, pursuant to this chapter, brought an action in circuit court to determine the necessity of taking the public utility plant of the defendant in that action. The jury found that public necessity existed, and the court entered a judgment in accordance with the verdict, from which judgment the defendant appealed. This court, speaking through Mr. Justice VINJE, held that the appeal must be dismissed. It was held that no judgment was contemplated by the section, but that the action terminated with the verdict. Hence the judgment was void and furnished no basis for an appeal. It was further held that an appeal does not lie from a mere verdict of the jury or finding of fact by the court. It was pointed out that the verdict of the jury is but one step in the condemnation proceedings, and that the whole legislative scheme of condemnation apparently negatives the idea that the proceeding should halt at an intermediate step for the purpose of an appeal. Thus, even though the proceedings in which a jury's verdict is taken may be considered to fall within the definition of a special proceeding, no appeal is provided for from such verdict.

However, for another reason, we think this order appealable. In the case of condemnation of property by municipalities, a provision requiring that the determination of necessity shall be by a jury is in compliance with the requirements of sec. 2, art. XI, Const., which provides:

"No municipal corporation shall take private property for public use, against the consent of the owner, without the necessity thereof being first established by the verdict of a jury."

The determination of the fact of necessity is fundamentally a legislative function except so far as the power may have been limited by the constitution. In the case of the condemnation of property by a municipality, it has been

so limited by the requirement that the necessity of taking shall be established by the verdict of a jury. It was held in *State ex rel. Allis v. Wiesner,* 187 Wis. 384, 204 N. W. 589, that "having in mind the state of the law at the time of the adoption of the constitution, it is not conceivable that the framers of that document intended to use the term 'jury' other than as applicable to a body of twelve men charged with the duty of finding certain facts under the direction of a court."

The constitution requires not a jury trial but the verdict of a jury under the supervision of the court. *State ex rel. Allis v. Wiesner, supra.* In compliance, the statute has provided that an action be commenced in the course of which a jury verdict be taken as to the fact of necessity. Consequently there is imposed upon the judicial branch of the government some duty of supervision with respect to the action in which a jury is impaneled. The submission of any part of the process of condemnation to a jury under the direction of the court to that extent invokes the judicial power of the court to supervise the jury, and this includes the power and duty in a proper case to set aside the proceedings upon the ground that the jury is improperly constituted or is guilty of such misconduct as to vitiate the verdict. The history of the constitutional provisions vindicates these conclusions. Quaife, Attainment of Statehood, Wisconsin Historical Publications, 735; Journal and Debates of Constitutional Convention, Wisconsin 1847–1848, p. 478. The history of a somewhat similar provision in the constitution of Michigan is set forth in *Paul v. Detroit,* 32 Mich. 108, a quotation from which occurs in *State ex rel. Allis v. Wiesner, supra.*

The power of the court thus to supervise the jury and its verdict, for the purpose of enforcing the spirit and letter of the constitutional requirement of a jury trial, in no way in-

volves the substitution of the court for the jury in the determination of the necessity for taking. The power of the court over the jury and its verdict is to be asserted solely for the purposes above indicated.

In *Milwaukee L., H. & T. Co. v. Ela Co.* 142 Wis. 424, 125 N. W. 903, it was held that the court, in a condemnation proceeding, had the power to preserve the integrity of judicial determinations, and that this power could be exercised in a proceeding to set aside a report of commissioners to assess damages upon a condemnation proceeding. In that case it was said:

"It is suggested that the statute contemplates the appeal proceeding as the only one for a review of the award. That seems clearly unsound. There is no more reason for holding that the right of appeal is the only one open to the landowner in case of misconduct of the commissioners than is that such right is the only remedy in case of misconduct of triers of issues of fact in other civil suits. The appeal is a remedy for reviewing the result of judgment on the question of damages. It does not raise any other question. The landowner is entitled to the fair judgment of an impartial commission, and then to appeal therefrom, if he sees fit, to review such judgment. To hold that he may be bound by conduct of the commissioners which would render their determination absolutely void, or voidable, in an ordinary civil suit, leaving him only the expensive remedy of appeal, which would not test, at all, the good-faith character of the award, would be to take from him a statutory right and open the way to, if not invite, reprehensible and, in large measure, remediless conduct of parties and commissioners. It would remove the proceedings from the high character of the judicial plane to the lower level of irresponsible trickery and manipulation."

We think the reasoning of the *Ela Case* applies here. While the *Menasha Case* clearly establishes that there can be no appeal from the verdict, and while, strictly speaking, a motion for new trial, in the sense or with the scope that such

a motion has in ordinary civil actions, is not applicable, we think that the motion here is in effect an appeal to the supervisory power of the trial court, an attempt to invoke the power of that court to scrutinize the fairness and integrity of the proceedings, and to set them aside if their integrity is successfully assailed. Such an appeal to the supervisory power of the court over the jury is itself a special proceeding, and the order denying the relief is a final order affecting a substantial right made in a special proceeding. *State ex rel. Williams v. Shaughnessy*, 202 Wis. 537, 232 N. W. 861. Hence it is our conclusion that the order herein involved is appealable.

Coming to the merits of the case, it is our conclusion that the order must be reversed under the doctrine of *La Valley v. State,* 188 Wis. 68, 205 N. W. 412. This subject was completely discussed in the *La Valley Case,* and there is no need for an extended discussion here. It is essential to public confidence in the administration of justice that the conduct of parties with respect to the jury shall be above suspicion. While the village, and not its officers, was a party to the action, the officers were necessarily the moving parties in securing the condemnation of the utility. They were witnesses in the proceeding to establish necessity, and their credibility was a matter for the jury to consider and determine. While their conduct in giving and extending hospitality to a juror may have been, and probably was, uninfluenced by any improper motive, it was nevertheless the sort of thing that leads to misgivings upon the part of the public generally that the trial of cases is not fair and unbiased. In a jury trial there are a great many factors, some of them very subtle, which, consciously or unconsciously, influence the juror's mind in judging the credibility of witnesses and resolving the merits of the case. The very fact that the witnesses who were extending the courtesy of a ride to the juror

warned him not to discuss the case, would be calculated to create in his mind a favorable impression of the character of the witnesses, and lead him to the conclusion that their testimony was as unbiased as their attitude appeared to be.

It is of no consequence to determine whether the jury's verdict is required to be unanimous or not. Juries' verdicts are arrived at after a conference, in which the views of each juror are expressed and conceivably influence the rest of the jurors. It is extremely difficult to assess the probable consequences of misconduct, since the mental processes of human beings are not subject to accurate demonstration by reliable evidence of a direct character. The necessity for preserving the integrity of jury verdicts requires that the jury be protected from the influence of conduct which, more often than not, will result in a biased verdict.

The facts in this case are all undisputed, and are within the rule of the *La Valley Case*. The error of the trial court was an error of law. The motion should have been granted, and it follows that the order must be reversed.

*By the Court.*—Order reversed, and cause remanded with directions to set aside the verdict of the jury.