SHEFELKER, Appellant, vs. FIRST NATIONAL BANK OF MARION, Respondent.

*October 10—November 7, 1933.*

For the appellant there were briefs by *Eberlein & Larson* of Shawano, and oral argument by *M. G. Eberlein.*

For the respondent there was a brief by *B. E. Meyer* of Marion and *Goggins, Brazeau & Graves* of Wisconsin Rapids, and oral argument by *Mr. Theo. W. Brazeau* and *Mr. Meyer.*

FOWLER, J. This case is a sequel to that of *Shefelker v. First National Bank,* 207 Wis. 510, 242 N. W. 137, where-

in it was decided that a judgment for unlawful detainer entered by a justice of the peace in a suit brought by the defendant herein against the plaintiff was void because the justice lost jurisdiction. Pursuant to a writ issued on that void judgment the defendant evicted the plaintiff. The plaintiff by this action seeks to recover his damages for that eviction.

Two questions are for consideration. The appellant claims that (2) the court erred in granting the defendant's motion for a new trial for misconduct of a juror. The respondent claims (1) that the court erred in denying its motions for a nonsuit and for a directed verdict. The latter question is treated first.

(1) The plaintiff on August 20, 1917, rented two rooms of the defendant under an oral agreement for an occupancy of one year and so long thereafter as he should pay the rent, at a rental of $15 per month. He occupied these rooms as dental offices until May, 1923, when as plaintiff testified "a new arrangement was made." Plaintiff further testified that at this time "nothing was said about the terms and conditions of the new arrangement." At this time the plaintiff moved from two side rooms which he had been occupying into two front rooms that had previously been occupied by a doctor who was retiring and another doctor came in and occupied the rooms that the plaintiff had been occupying. Soon thereafter the plaintiff and this doctor agreed to use the outer of plaintiff's new rooms as a joint X-ray room and to use as a joint waiting room one of the side rooms plaintiff had formerly occupied which adjoined the other front room he was then occupying. The defendant acceded to this joint arrangement and cut doors to effectuate it. The plaintiff continued to pay or to tender to the defendant up to the time of his eviction the same monthly rental that he paid under his original agreement. Previous to the eviction defendant served upon plaintiff a thirty-day notice, which was sufficient under sec. 234.03, Stats., to

terminate his tenancy if it was a tenancy at will as defendant claims, but insufficient, under sec. 234.07, Stats., to terminate it prior to the time of the eviction, if as plaintiff claims it was a tenancy from year to year, dating from time of plaintiff's original entry, as in such case the statutory notice terminates the lease at the end of a year, and the notice was served shortly after a new year's lease had begun. This brings us to the point of determining the nature of the tenancy.

Plaintiff bases his contention that his tenancy was from year to year on the assumption that when he entered the two side rooms in 1917 he had a valid lease of those rooms for one year; that on his holding over after the year, his tenancy of those rooms became a tenancy from year to year; and that somehow, but just how he does not explain, as his first tenancy was from year to year so was the second and so was the third. If we assume plaintiff's proposition to be correct that his tenancy of the side rooms became a tenancy from year to year by his holding over at the end of the first year, it seems very plain to us that this does not fix the nature of his later tenancies. Three separate tenancies of three different premises were created. When plaintiff moved from the side rooms first leased into the front rooms, whatever rights he had acquired respecting the nature of his lease of those rooms terminated. He then made a new lease of other premises. A new tenancy was then created, and the nature of that tenancy, as was the nature of the subsequent one, was fixed as one from month to month by the fact that the rent was paid at the rate of $15 per month.

"Weekly, monthly, quarterly or yearly payments (of rent) indicate, in the absence of express contract or negativing circumstances, tenancies from week to week, month to month, quarter to quarter, or year to year respectively.

"Where houses or lodgings are let without indicating the period at a . . . monthly . . . rent, . . . a monthly . . .

tenancy is usually presumed." 1 McAdam, Landlord and Tenant (4th ed.) 115, 116.

"A tenancy from month to month will generally arise where no definite term of letting is specified by the parties and the rent is payable monthly. So a lease at will with the rent payable in monthly instalments becomes a tenancy from month to month." 1 Underhill, Landlord and Tenant, 150.

Plaintiff also contends that if his tenancy was from month to month his eviction was unlawful because it was made by the sheriff under a writ of restitution issued upon a void judgment. The defendant claims that as it had terminated the plaintiff's tenancy by giving a proper notice, it had the right peaceably to dispossess the plaintiff independent of the writ and that the sheriff as its agent did peaceably dispossess him.

Sec. 234.04, Stats., provides that after the thirty-day statutory notice to terminate a tenancy at will has been given and the period has expired, "the landlord may re-enter, or maintain an action for the recovery of possession thereof, or proceed in the manner prescribed by law to remove such tenant without any further or other notice to quit." The law thus gave the defendant the right of re-entry independent of the justice court proceeding. It might not make "forcible entry," that is "not with strong hand or with a multitude of people," but it might do so "in a peaceable manner." Sec. 291.03, Stats. The entry made by the sheriff did not violate this statute, but was made "in a peaceable manner." It is without dispute that the sheriff went to the plaintiff's residence and asked him for the key to his rooms, so that he might enter. The plaintiff refused to give the sheriff his key, but told him the janitor had a key. Later the sheriff phoned the plaintiff and asked him if he was coming down. The plaintiff testified as to this call that: "I said I am not coming down now, or I am not coming down, and I said Art Pockat was the janitor, I meant to say Art Pockat would let him in." The sheriff then asked

the janitor to let him in the rooms and the janitor opened the door with his key and the sheriff entered. An entry in the absence of the tenant by use of a key is a peaceable entry. *Livingston v. Webster,* 26 Fla. 325, 8 South. 442; *Brooks v. Brooks,* 84 N. J. L. 210, 86 Atl. 537. Peaceable entry in the absence of the tenant and putting his goods out of doors after lawful termination of a tenancy by notice is lawful. *Clark v. Keliher,* 107 Mass. 406.

"Where the landlord has effected an entry, although in the absence of the tenant, he may remove the goods of the tenant from the premises, provided in so doing he exercises ordinary and reasonable care and refrains from unnecessary . . . damage or injury to property." 36 Corp. Jur. pp. 601, 602, and cases cited.

That no injury to plaintiff's property was done in the eviction is evidenced by the finding of the jury that the plaintiff suffered no damage by reason of the eviction, but only suffered damage by being compelled to remove from Marion to Clintonville because he could obtain no suitable office in Marion. There was no effort by plaintiff to regain possession of the rooms after defendant's entry, so that there was no violation of sec. 291.03, Stats., by the defendant's forcibly withholding possession after its peaceable entry.

The plaintiff cites no authority in refutation of defendant's contention that the eviction was peaceable, or to the point that if it was peaceable the defendant is barred from claiming that it was lawful by the fact that it was done by the sheriff armed with and upon the ostensible authority of a writ issued on a void judgment. We perceive no reason why the defendant should be so barred. Having the right, to do what and as it did, it seems to us immaterial that it sought the additional protection of a writ it assumed to be valid but which in law was as to the defendant invalid. We are of opinion that the motion of the defendant for a directed verdict should have been granted.

(2) The case being ruled by the above in favor of the defendant, there is no necessity for considering the plaintiff's alleged assignment of error by reason of the granting of the defendant's motion for a new trial for misconduct of a juror. However, to avoid misconception of bench and bar as to the effect of *La Valley v. State,* 188 Wis. 68, 205 N. W. 412, and *Bangor v. Hussa C. & P. Co.* 208 Wis. 191, 242 N. W. 565, which involved, respectively, association with a jury and with a juror during trial of a case somewhat similar to that for which the new trial herein was granted, we conclude to discuss the matter.

The facts relating to the misconduct of the jury were that one of the jurors on the case had been riding to and from her residence at Clintonville with another juror on the panel. The day of the trial this other juror was not going home and arranged with one of plaintiff's witnesses, Dr. Devine, that the juror in the case ride home with him. This witness showed much interest in the case and partiality toward the plaintiff. The plaintiff and two of his other witnesses had ridden to the trial with Dr. Devine and rode home with him at night. The juror sat in the front seat with Dr. Devine. The distance from Waupaca to Clintonville is thirty-five or forty miles. The two witnesses in the back seat got out at Marion, eight miles from Clintonville, and the plaintiff and the juror rode on to Clintonville. The plaintiff had no part in arranging that the juror should be taken home by Devine and did not know that she was to ride with him until he got into the automobile for the ride home. On discovering that she was to ride with Devine the plaintiff said nothing about it. The plaintiff claims that it was error to grant a new trial under these circumstances. He concedes that had the plaintiff himself extended the courtesy to the juror it would have been cause for a new trial, but insists that the reason of the rule is extension of the courtesy by the party or some one representing or stand-

ing in the position of the party, and that as the plaintiff herein or any one representing him did not extend it, the rule does not apply.

It must be conceded that in our principal case upon the subject, *La Valley v. State, supra,* the ruling rests upon the fact that the person who extended the courtesy there involved was the sheriff, and that the sheriff in a way represented the state or stood in the position of the state in the trial. It is also true that in the most recent case upon the subject, *Bangor v. Hussa C. & P. Co., supra,* wherein the persons extending to the juror the courtesy of permitting him to ride with them from his residence to and from the place of trial were village trustees and they in a way represented or stood in the position of the party to the proceeding, the ruling of this court ordering a new trial so rested. In those cases the granting of a new trial was held to be compulsory upon the trial court. Still the underlying fact back of the ruling in both cases was that opportunity was presented for the persons representing the party to exercise an influence, although done silently or without mention of the case, upon the action of the juror. This opportunity was present in the instant case even though the courtesy was not extended by the plaintiff. The plaintiff availed himself of this opportunity. He had the advantage of this opportunity whether he availed himself of it with or without thought of the possible or probable effect riding in the same vehicle with the juror might have. The rule as to misconduct appears to be that—

"If the court can see that the misconduct had or might have had an effect unfavorable to the party moving for a new trial, the verdict should be set aside." *State v. Hartmann,* 46 Wis. 248, 249, 50 N. W. 193.

It is true that the juror in the instant case makes affidavit that she was not at all influenced by the fact that she rode thirty-five or forty miles in the same conveyance with the

plaintiff and his witnesses. But, as said by Mr. Chief Justice RYAN in *State v. Dolling,* 37 Wis. 396, 398:

"Jurors are rarely, perhaps, wilfully guilty of improper conduct to disturb their verdict. A well-meaning juror who is unconsciously so guilty will honestly deny it. An evil-minded juror consciously so guilty will be very apt to deny it. So that a juror's denial . . . can weigh little."

We may assume that the juror here involved is honest in her denial. As further said in the *Dolling Case, supra:*

"Circumstances calculated to exert improper influence on a verdict are so various and indefinite that it is hardly exaggeration to call them infinite. They may reach jurors consciously or unconsciously, directly or indirectly, in a vast variety of ways. . . . How is a negative of such (influence) . . . to appear to the satisfaction of the court?"

While it is possible that the juror was not influenced favorably to the plaintiff by the fact of her ride with him and his witnesses, it is quite certain that had the ride occurred before the jury was impaneled, the defendant had it known of it would not have permitted the juror to sit upon the case. It is also quite certain that a party knowing that a juror was during the trial circumstanced as was the one here involved, would feel, if the verdict went against him, that the juror was influenced by the association with the other party and his witnesses, and that he did not have a fair trial. To secure respect for verdicts by parties or the public it is quite as important that there shall be an appearance of fairness as that the trial should in fact be fair. In *Wetzler v. Glassner,* 185 Wis. 593, 201 N. W. 740, there was association of a juror with a party and other persons, one of whom was a son of the adverse party, by all taking lunch together, upon someone's saying "Let's go to the Athletic Club for luncheon." An order for a new trial was entered because of the association. This court reversed the order for the reason that the moving party knew of the

association during the trial and made no objection on account of it until after verdict was returned against him. It does not appear what this court would have done had the moving party not known of the occurrence until after the trial. The question before this court, as stated in the opinion, page 596, was: "Was the (trial) court, in the exercise of a sound discretion, warranted in setting aside the verdict because of misconduct of the plaintiff?" whom the defendant accused of extending to the juror an invitation to luncheon. The court was apparently of opinion that it did not appear that the juror was in fact influenced by association with the plaintiff, for the opinion, page 597, states that "the juror Gleich at no time considered himself invited to lunch and there is not the slightest indication that whatever occurred was intended to or did influence the juror." But whatever action this court might have taken in the *Wetzler Case, supra,* but for the foreknowledge of the moving party, we are of opinion that there was no abuse of discretion in the instant case.

It appears that there was no argument of the defendant's motion for a directed verdict at the time it was made and that the only matter presented to the court upon the motion for a new trial was the misconduct of the juror. The record does not disclose any motion for a nonsuit. This statement is made in fairness to the trial judge, who had no opportunity for deliberate consideration of the questions raised by the motion for a directed verdict.

*By the Court.*—Upon the respondent's motion for review the order of the circuit court is reversed, with directions to dismiss the complaint.